532 A.2d 453

In re Petition of Christine McLAUGHLIN for Return of Property—One Ford Bronco.

**Appeal of Christine McLAUGHLIN.**

Superior Court of Pennsylvania.

Argued April 30, 1987.

Filed Oct. 15, 1987.

John P. Yatsko, Norristown, for appellant.

Before OLSZEWSKI, DEL SOLE and HOFFMAN, JJ.

DEL SOLE, Judge:

We consider an appeal from an Order denying Appellant's petitions for return of property. The property in question is a 1978 Ford Bronco which was seized by the Commonwealth incident to the arrest of one Paul Massad for possession of marijuana.

Appellant grounds this appeal on two counts of error allegedly committed by the hearing court. First, Appellant posits that the evidence presented during a hearing on the petitions was insufficient to substantiate the forfeiture. Second, it is argued that the hearing judge erred in failing to uphold Emil Massad's bailor's claim to the forfeited vehicle.

■ In the instant case, the Bronco was seized by the Commonwealth pursuant to the Forfeiture and Condemnation of Vehicles Act, 35 P.S. §§ 831.1.—831.5. Section 831.1 of the Act provides:

Any wagon, buggy, motor vehicle, water or air craft or other vehicle or conveyance in which is *stored, contained*

*or transported* any narcotics or drugs, the possession or transportation of which is in violation of any law of this Commonwealth, shall be forfeited to the Commonwealth. . . .

(Emphasis supplied).

Forfeiture proceedings are civil in form, yet quasi-criminal in character. During such proceedings, it is the Commonwealth's burden to prove by a preponderance of the evidence that the vehicle was used in the proscribed manner. The vehicle's connection with the crime need not be proven beyond a reasonable doubt. *Petition of Maglisco*, 341 Pa.Super. 525, 531, 491 A.2d 1381, 1384 (1985).

The forfeiture of the Ford Bronco stems from an investigation of Paul Massad by the Montgomery County Narcotics Enforcement Team. Detective Raymond Kuter of that unit negotiated with Mr. Massad for the purchase of an unknown quantity of marijuana, (N.T., 15). On the evening of the arrest, Detective Kuter had made arrangements with Mr. Massad to meet at the Casa Maria restaurant, located in King of Prussia, to effectuate the transaction. (N.T., 16). The restaurant's parking lot was under surveillance by members of the narcotics unit who observed Mr. Massad's arrival in the Ford Bronco. At the time, Mr. Massad approached a black Volkswagon Rabbit, which was already parked in the lot, and conversed with one of two unidentified males of that vehicle who later joined Mr. Massad in the Bronco. Eventually, the unidentified male left the Bronco, climbed back into the Volkswagon, and exited the parking lot. (N.T., 17).

Detective Kuter later entered the Bronco and was shown a brown paper bag containing one half pound of marijuana. When asked where he viewed the marijuana, the witness related:

[w]e were sitting in the front seat. He was in the driver's seat of his Bronco. I was in the passenger seat. And the bag was sitting between the two seats.

(N.T., 22). After viewing the marijuana, Detective Kuter went to his car and radioed for other detectives to move in and arrest Mr. Massad. The Bronco was then driven to the

Upper Merion Police Department where it was impounded. (N.T., 23).

■ Throughout its opinion filed in accordance with Pa.R. App.P. 1925, the hearing court stated that the Commonwealth clearly established that the Ford Bronco was "used by Massad to store, contain or transport illegal drugs and was properly seized by the Commonwealth." (Opinion, 10/29/86, 3). However, the hearing judge did not explicitly state which of the three actions were taken by Mr. Massad. For this reason, we deem it necessary to remand this case to the hearing judge for a hearing on the exact use of the Ford Bronco in conjunction with the attempted sale of marijuana. The hearing court is directed then to make specific findings with respect to the connection between the vehicle and Mr. Massad's failed caper.

We take this opportunity to note that the hearing court opined that the Ford Bronco was forfeited since Mr. Massad used it as a means of storing, containing, or transporting the controlled substance. The statutory source of this conclusion is § 831.1 of the Act. After reviewing the Act in its entirety, we caution the hearing court that it improperly relied upon § 831.1 as grounds for upholding the forfeiture. Rather, § 831.1 merely sets out the reasonable bases for the *confiscation* of the vehicle by the Commonwealth, not whether a subsequent adjudment of *forfeiture* is warranted. Section 831.3 of the Act provides the circumstances under which a vehicle may be found to have been properly forfeited to the Commonwealth:

> If upon hearing it appears that any such vehicle has been used to *store, possess or transport* any narcotic or drug, the transportation or possession of which is unlawful, such vehicle shall be adjudged forfeited and condemned and shall be disposed of as hereinafter provided.

35 P.S. § 831.3 (Emphasis supplied).

Arguably, the difference between the "stored, *contained* or transported" language in § 831.1 and the "store, *possess* or transport" verbiage of § 831.3 is neglible. Nonetheless, our legislature in devising the Act explicitly stated that its purpose was to provide "for the forfeiture and condemna-

tion of vehicle used to *store, possess or transport* narcotics or drugs, the possession or transportation of which is in violation of law." *See* Title of Act.

Thus, the hearing judge must decide whether or not the Ford Bronco was utilized to: store the marijuana for some future use, possess the controlled substance, or transport the marijuana. Contrary to Appellant's interpretation of the Act, a vehicle may be adjudged forfeited by a finding that only one of these circumstances occurred.

■ Next, Appellant complains that a Petition by Bailor for Return of Property filed by Emil Massad should not have been dismissed by the hearing judge. Emil Massad was a party before the hearing court; however, he neither filed an appeal nor joined in Appellant's appeal. In *Goodrich v. Luzerne Apparel Manufacturing Corp.*, 356 Pa.Super. 148, 514 A.2d 188 (1986), we opined that the issues raised in the brief of defendants offered in support of an appeal filed by other defendants would not be considered insofar as they did not appeal separately or join in the other defendants' appeal. *Id.*, 356 Pa.Superior Ct. at 514 A.2d at 188, n. 1. *See* Pa.R.App.P. 501, 512, 902, 903. Accordingly, we shall not consider this issue.

Order affirmed in part. Case remanded for proceedings consisent with this Opinion. Jurisdiction of this court retained. Jurisdiction of this panel relinquished.

OLSZEWSKI, J., files a concurring and dissenting opinion.

OLSZEWSKI, Judge, concurring and dissenting:

I agree with the majority that the petition of Emil Massad should not be reviewed as he neither filed an appeal nor joined in the appeal of Ms. McLaughlin. I take issue, however, with the majority's decision to remand the case for an unnecessary determination that the Ford Bronco was used to "store, possess or transport" the marijuana.

As the majority correctly notes, the statutory authority for the confiscation and, subsequently, the forfeiture of vehicles provides as follows:

### § 831.1. Forfeiture for storage or transportation of narcotics or drugs

Any wagon, buggy, motor vehicle, water or air craft or other vehicle or conveyance in which is *stored, contained or transported* any narcotics or drugs, the possession or transportation of which is in violation of any law of this Commonwealth, shall be forfeited to the Commonwealth subject to the provisions hereafter set forth[.]

35 Pa.S.A. § 831.1 (Purdon's Supp.1987) (emphasis added). Upon taking possession of a vehicle, the Commonwealth is obliged to deliver it to the district attorney, subject, however, to be returned to the owner upon execution of a bond. 35 Pa.C.S.A. § 831.2. Thereafter, the forfeiture procedure is governed by § 831.3 which provides:

### § 831.3. Vehicle adjudged forfeited after hearing

If upon hearing it appears that any such vehicle has been used to *store, possess or transport* any narcotic or drug, the transportation or possession of which is unlawful, such vehicle shall be adjudged forfeited and condemned and shall be disposed of as hereinafter provided.

35 Pa.S.A. § 831.3 (emphasis added). As this section makes clear, a vehicle may not be forfeited unless the evidence shows that it had been used to *store, possess* or *transport* any drug.

In rendering a decision that the Ford Bronco was forfeited to the Commonwealth, the hearing court stated:

It is further this Court's opinion that *the marijuana was in fact stored in the vehicle.* The vehicle was, therefore, used for the purpose of either storing—and also been used in transporting is irrelevant [sic] as to whether he brought the marijuana to the scene of the Casa Maria or not because he did in fact have it there.

(N.T. 7/3/86 at 38) (emphasis added). A review of the hearing testimony shows that the court's decision was well-founded.

The arrest of Paul Massad on the charge of possession of marijuana culminated a long-term undercover investigation

by the members of the Narcotics Enforcement Team of the Montgomery County District Attorney's Office. A member of that team, Detective Raymond Kuter, testified that for several months he had purchased marijuana from Paul Massad. During a telephone conversation on March 12, 1986, Massad advised the detective that the source of the marijuana was in Willow Grove, Pennsylvania, and that Massad had to drive there to complete a transaction. Detective Kuter agreed to meet Massad later that same evening at a restaurant in King of Prussia, Pennsylvania, in order to purchase some marijuana.

Detective Sherman Nowlin, also of the Narcotics Enforcement Team, testified that he and three other units were assigned to surveil Massad. After the telephone conversation between Detective Kuter and Massad, Detective Nowlin and the other units followed Massad from his home in King of Prussia to a residence in Willow Grove. The officers also followed Massad to the restaurant in King of Prussia where he was to meet with Detective Kuter. Detective Nowlin recalled that when he and the other police units arrived at the restaurant to set up surveillance, he observed two males in a car which was parked behind the restaurant. Massad arrived alone in the Ford Bronco, drove up to the unidentified car, and talked to one of the males. The car then left the parking lot. Thereafter, Detective Kuter arrived. Detective Kuter explained that he joined Massad in the front seat of the Ford Bronco. At that time, Massad showed the detective a paper bag containing marijuana.[1] The marijuana was located between the driver's seat and the passenger's seat of the Bronco. Massad was then arrested and the Ford Bronco impounded.

Based upon this testimony of the officers, I am satisfied that the evidence supports the hearing court's finding that the marijuana was stored in the Ford Bronco. Thus, the vehicle was properly forfeited to the Commonwealth.

I agree with the majority that the hearing court improperly relied upon § 831.1 in rendering its decision. (N.T.

1. It was stipulated that the bag contained marijuana. (N.T. 7/30/86 at 31–32).

7/30/86 at 39; Opinion pursuant to Pa.R.App.P. 1925(c)[2] 10/29/86 at 3). As noted above, § 831.3, not § 831.1, sets forth the circumstances under which an order of forfeiture may be entered. I believe, however, that this error is of no consequence. Although § 831.1 authorizes the confiscation of vehicles and § 831.3 determines when forfeiture is proper, both sections are satisfied here since the hearing court held that the marijuana was "stored" in the Ford Bronco.[3] *Compare* 35 Pa.C.S.A. § 831.1 *with* 35 Pa.S.A. § 831.3.

I believe the decision to remand the matter is unnecessary and, consequently, is an unproductive use of judicial resources. I would therefore affirm the order.

---

**2.** In a Rule 1925(c) "Opinion," the court merely explains the reasons for its prior order. *See Commonwealth v. Crowley,* 259 Pa.Super. 204, 209, 393 A.2d 789, 792–793 (1978); *see generally* Pines, *Pennsylvania Appellate Practice: The Appellate Journey (From Filing the Appeal to Briefing),* 91 Dick.L.Rev. 377, 421 (1986).

**3.** According to the docket sheet, the Opinion pursuant to Pa.R.App.R. 1925(c) was filed on October 29, 1986; however, the transcript of notes of testimony was filed several days later, on November 3, 1986. I believe that the court's ruling of July 30, 1986 controls, not the explanation given in the Rule 1925(c) Opinion (which was filed prior to the time the transcript was completed).