566 A.2d 605

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Joseph E. HESS.**

Superior Court of Pennsylvania.

Argued June 13, 1989.

Filed Oct. 24, 1989.

Reargument Denied Dec. 7, 1989.

Petition for Allowance of Appeal Granted May 29, 1990.

40

Syndi L. Norris, Asst. Dist. Atty., Carlisle, for Com.

William Costopoulos, Lemoyne, for appellee.

David M. McGlaughlin, Philadelphia, amicus curiae.

Before BROSKY, BECK and HOFFMAN, JJ.

BROSKY, Judge.

This appeal, taken by the Commonwealth of Pennsylvania, is from an Order vacating a temporary restraining order and dismissing the Commonwealth's Motion for preservation of property subject to forfeiture.

On appeal, the Commonwealth contends that an evidentiary hearing was necessary to determine the nature and source of the restrained assets and the nature of the contractual agreement between the parties relative to these assets. The Commonwealth also asserts that the procedure of restraining assets used to pay attorneys' fees by the issuance of a temporary restraining order does not violate a criminal defendant's right to counsel under the Sixth Amendment to the United States Constitution or under Article I, Section 9 of the Pennsylvania Constitution, does not violate due process of law under the Fifth and Fourteenth Amendments to the United States Constitution or under Article I, Section 9 of the Pennsylvania Constitution and does not constitute an unlawful seizure in contravention of the Fourth and Fourteenth Amendments to the United States Constitution or Article I, Section 8 of the Pennsylvania Constitution; nor, the Commonwealth maintains, is the forfeiture statute overly broad and void for vagueness. Lastly, but not the least, the Commonwealth argues in support of the viability of the statute in terms of the public policy interests at stake in ferreting out those responsible for illegal drug trafficking and the concomitant evils which that trade engenders.

For reasons that follow, we are of the opinion that the trial court was required to conduct an evidentiary hearing to determine, as a threshold matter, whether the assets restrained pursuant to the temporary restraining order are traceable to an illegal drug exchange, thus making them subject to forfeiture. Accordingly, we vacate the Order of the trial court of November 28, 1988, which vacated the temporary restraining order entered on September 22, 1988, and dismissed the Motion of the Commonwealth for preservation of property, and remand for the holding of such evidentiary hearing.

On September 15, 1988, Joseph E. Hess (hereinafter, "Hess") was arrested by a Tri–County Narcotics Strike Force and charged with the sale and delivery of one quarter pound of cocaine and conspiracy to sell and deliver the

cocaine. Subsequently, he obtained the services of William C. Costopoulos, Esquire, (hereinafter, "Costopoulos") of the law firm of Kollas, Costopoulos, Foster and Fields (hereinafter, "the law firm") to represent him on the above charges.

On September 22, 1988, the Commonwealth filed a Motion for preservation of property subject to forfeiture in which it averred, *inter alia*, that the law firm which Hess had retained required payment of a significant cash retainer prior to representation, that Hess did not have the means to acquire the amount of cash needed for the retainer, except for funds which the Commonwealth believed were derived directly from illegal drug trafficking, and that the monies paid to the law firm represent proceeds which are traceable to such drug trafficking.

The Commonwealth requested injunctive relief to preserve during the pendency of the forfeiture claim all money, securities, negotiable instruments and other thing of value paid to the law firm by Hess for legal representation. That same day, Judge Bayley of the Court of Common Pleas issued a temporary restraining order enjoining Hess and the law firm from disposing of any monies, securities, negotiable instruments and/or any other thing given by Hess to the law firm as payment of the retainer for legal services on the pending drug charges. The Order also directed that these assets be preserved in the law firm's escrow account pending further order of court. The restraining order was to remain in effect until the conclusion of the hearing set for September 29, 1988. The hearing date was continued to September 30, 1988, by agreement of the court and the parties.

On that date, i.e., September 30, 1988, Hess, through Costopoulos, filed a Motion to strike the Commonwealth's Motion for preservation of property and to lift the temporary restraining order. This Motion alleged, *inter alia*, that the law firm had complied with the directive of the temporary restraining order. Hess also set forth various constitutional and statutory objections to the enabling legis-

lation, 42 Pa.C.S.A. § 6801 *et seq.*, the Commonwealth's Motion to preserve and the temporary restraining order. By permission of the court, the Pennsylvania Association of Criminal Defense Lawyers (hereinafter, *"amicus"*), intervened as *amicus curiae* and also filed a Motion to vacate the temporary restraining order. The Motion of *amicus* launched a constitutional attack upon the forfeitures statute, *supra*, both facially and as applied.

However, on September 30, 1988, the date set for the hearing on the temporary restraining order, Costopoulos informed the court that he wished to brief the constitutional issues raised in Hess' Motion to strike and vacate as threshold issues prior to any hearing. The court agreed and, by Order filed October 4, 1988, it continued the temporary restraining order and and set oral argument on the Motion and the briefs for October 18, 1988. At the September 30, 1988, "proceeding" the court informed the parties that it would not hold a hearing on October 18, 1988, or subsequently, unless the parties could demonstrate that relevant evidence was available to supplement the record. By Order of November 28, 1988, the trial court vacated the temporary restraining order entered on September 22, 1988, and dismissed the Commonwealth's Motion for preservation of property. This appeal followed.

The parties, in their respective appellate briefs, and the trial court, in its Opinion filed in conjunction with the above Order, assumed, for the purpose of analyzing the statutory and constitutional claims,[1] that the monies or other thing(s) of value tendered to the law firm as a retainer for Hess' drug charge defense and which are the subject of the temporary restraining order represent proceeds directly traceable to illegal drug transactions.

The court, in its Opinion, reasoned that the phrase "all proceeds traceable to such an exchange" as used in the statute (*see* 42 Pa.C.S.A. § 6801(a)(6)(i)(A)) exempts from its reach legal fees tendered for legitimate representation be-

---

1. The court, in its Opinion, did not reach the constitutional claims raised by the parties.

cause "if a criminal defendant pays a retainer to an attorney for legitimate criminal defense representation, that constitutes a contract with the attorney. As long as the attorney provides the legal services [ ] and charges a fee that is not illegal or excessive, he or she is entitled to the money paid on retainer" regardless of the source of that money. Trial Court Opinion, 11; footnote omitted. The court also held that the above phrase does not contemplate subjecting the assets of "bona fide innocent persons", i.e., attorney fees paid for legal representation, to forfeiture. *Id.* at 9. Moreover, the court was

> not willing to conclude that an attorney *reasonably knows* that the money received as a retainer for criminal defense representation comes from a prohibited activity.... Payment of money for legitimate legal services under these circumstances, even though there is a possibility that it was obtained from an illegal source, does not constitute a sham transaction [ ] or the 'parking' of money with an attorney [ ] and does not change the status of the attorney from a bona fide innocent person....

*Id.* at 12; emphasis in original.

In deciding that the retainer funds were not subject to forfeiture under the statute, the trial court believed that the payment of legal fees represents a valid contractual arrangement between attorney and client for the performance of services and that this contractual arrangement confers upon the attorney the status of a bona fide innocent third person whose assets, for that purpose, are beyond the reach of the statute. Indeed, the trial court stated that "[o]nly a seizure from a [drug] dealer or a non-innocent third party subjects [the assets of] those persons to forfeiture under [the statute]." Id. at 13.

The trial court summarily decided the matter "based upon the averments by the Commonwealth in this case ..." (Id. at 14) [2] without first conducting an evidentiary hearing into

---

**2.** The record does not contain any transcript of an oral argument. The Opinion of the trial court only notes that oral argument was scheduled for October 18, 1988, and indicates that "[t]he threshold

the viability of continuing the temporary restraining order and in ascertaining the traceability of the funds temporarily restrained and sought to be forfeited.

While we are loathe to criticize the trial court for handling this matter in the summary fashion in which it did, we are equally hard pressed to justify its failure to conduct such a hearing based upon what we believe to be the statute's clear directive in this regard. The trial court stated that an evidentiary hearing was not necessary in this case because it was of the opinion that the Commonwealth had produced no evidence that the transaction between Hess and the law firm which involved the temporarily restrained funds was a sham. A hearing is only necessary, according to the trial court, "[i]f the Commonwealth has information in a particular case and avers that the payment of a retainer to an attorney by a defendant is for purposes other than for *legitimate* criminal defense representation...." *Id.*, note 18; emphasis in original. The trial court found, in other words, that, even assuming the illegality of the source, funds given to a third party for a *lawful* purpose, e.g., in this case, as payment for validly contracted for legal services, fall outside the reach of the forfeitures statute.

On appeal, the Commonwealth argues that a hearing was necessary in order to enable it to establish that the funds paid to the law firm as a retainer were subject to forfeiture pursuant to 42 Pa.C.S.A. § 6801(a). Sections 6801 and 6802, tit. 42 Pa.C.S.A., concern controlled substances forfeitures. Section 6801 sets forth, *inter alia*, what property shall be subject to controlled substances forfeiture. In relevant part, it provides:

> (a) Forfeitures generally.—The following shall be subject to forfeiture to the Commonwealth and no property right shall exist in them:
>
> .    .    .    .    .
>
> (6)(i) All of the following:

[constitutional and statutory] issues have been briefed and argued and are ready for decision." At 4.

(A) Money, negotiable instruments, securities or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of The Controlled Substance, Drug, Device and Cosmetic Act, and *all proceeds traceable to such an exchange.*

Emphasis added. Section 6802, entitled "Procedure with respect to seized property subject to liens and rights of lienholders", describes the steps which the Commonwealth must take and the proofs to which it is subject in obtaining an adjudication of forfeiture and details the procedure which the court is to follow in making its determination. The procedure followed in the instant case is provided for in subsections (f) [3] and (g) as follows:

(f) Preservation of the property subject for [sic] forfeiture.—Upon application of the Commonwealth, the court may enter a restraining order or injunction ... to preserve the availability of property described in section 6801(a) for forfeiture under this section ...

(1) ...

(2) prior to the filing of such an indictment or information, if, after notice to persons appearing to have an interest in the property and *an opportunity for a hearing,* the court determines that:

(i) there is a substantial probability that the Commonwealth will prevail on the issue of forfeiture and that failure to enter the order will result in the property being destroyed, removed from the jurisdiction of the court or otherwise made unavailable for forfeiture; and

(ii) the need to preserve the viability of the property through the requested order outweighs the hardship on any party against whom the order is to be entered.

However, an order entered pursuant to this paragraph shall be effective for not more than 90 days unless

**3.** Nothing in the record indicates that an indictment had been found or that an information had been filed against Hess on the drug charges at the time the Commonwealth filed its Motion to preserve.

extended by the court for good cause shown or unless an indictment or information ... has been filed.

(g) Temporary restraining order.—A temporary restraining order under subsection (f) may be entered upon application of the Commonwealth *without* notice or *opportunity for a hearing* when an information or indictment has not yet been filed with respect to the property, if the Commonwealth demonstrates that there is probable cause to believe that the property with respect to which the order is sought would be subject to forfeiture under this chapter and that provision of notice will jeopardize the availability of the property for forfeiture. Such a temporary order shall expire not more than ten days after the date on which it is entered, unless extended for good cause shown or unless the party against whom it is entered consents to an extension for a longer period. *A hearing* requested concerning an order entered under this subsection *shall be held* at the earliest possible time and *prior to the expiration of the temporary order.*

All emphasis supplied. Moreover, subsection (h) provides with respect to the above two subsections as follows: "(h) Hearing regarding property; rules of evidence.—The court may receive and consider, at *a hearing held pursuant to subsection (f) or (g),* evidence and information that would be inadmissible under the rules of evidence."

█ Unlike the trial court and the parties, we believe that the threshold consideration is to determine whether the assets paid to the law firm and/or Costopoulos do represent proceeds traceable to an exchange for a controlled substance in violation of the Controlled Substance, Drug, Device and Cosmetic Act, 35 P.S. § 780–101 *et seq.* In our view, this can only be accomplished by the holding of an evidentiary hearing into the source of these proceeds. The forfeitures statute is not silent in this regard. We have set forth, *supra,* the subsections of Section 6802 of the forfeitures statute which we believe are controlling in this regard.

Section 6802(f), which speaks of the procedure to be followed in requesting preservation of property subject to forfeiture and the power of the court to enter a restraining order or injunction in response to an application therefor, provides in subsection (f)(2) for a hearing prior to entry of any restraining order or injunction. At that hearing, the Commonwealth must demonstrate a substantial probability that it will be successful on the forfeiture issue and that the property will be destroyed, removed or be made otherwise unavailable for forfeiture if the order is not entered. The Commonwealth must also show that the need to preserve the property outweighs any hardship on the part of any party who would be adversely affected by the entry of such order.

Section 6802(g), describing the method by which the Commonwealth may seek a temporary restraining order to preserve property, as was done instantly, eliminates the necessity for a hearing prior to the entry of a temporary order if the Commonwealth demonstrates the existence of probable cause to believe that the preservation of the subject property is in jeopardy. However, it provides for the holding of a hearing once the temporary order is entered and before the expiration of the temporary order.

That both procedural scenarios described under these subsections contemplate the holding of a hearing is illustrated by the language contained in Section 6802(h) which refers to the scope and kind of evidence admissible "at a hearing held pursuant to subsection (f) or (g)." The final sentence of Section 6802(g) envisions a situation where a hearing is held concerning the viability of a permanent or continuing type of restraining order after entry of a temporary order. It is evident that subsections (f) and (g) complement each other, and it is further apparent that both subsections provide for the holding of an evidentiary hearing before the entry of a permanent restraining order or the continuation of a temporary order.

Prior to assessing any statutory construction claims or constitutional attacks upon the statute, itself, the plain

wording of Section 6302(f) and (g) contemplates the holding of an evidentiary hearing to meet the threshold problem of ascertaining the source of the funds, monies or proceeds and to determine if its/their source is traceable to an illegal drug transaction. The failure of the trial court to conduct such threshold hearing and its disposition of the matter in summary fashion was error, and we so hold.

In *United States v. Monsanto*, —— U.S. ——, 109 S.Ct. 2657, 105 L.Ed.2d 512 (1989), a case almost factually and procedurally similar to the matter at bar, the United States of America, pursuant to the criminal forfeitures provision of the Comprehensive Forfeiture Act of 1984, 21 U.S.C. § 853, sought and was granted, under subsection (e)(1)(A) thereof, a temporary restraining order freezing certain assets of Monsanto pending trial. Monsanto moved to vacate the restraining order, alleging that he needed these assets to enable him to retain counsel. Monsanto also raised the identical statutory and Sixth Amendment and due process claims now advanced by Hess.[4]

On appeal from the denial of Monsanto's Motion to vacate, a panel of the United States Court of Appeals for the Second Circuit remanded the matter to the United States District Court for an "adversarial hearing 'at which the government ha[d] the burden to demonstrate the likelihood that the assets are forfeitable;' if the Government failed its burden at such a hearing ... any fees paid to an attorney would be exempt from forfeiture irrespective of the final outcome at respondent's [Monsanto's] trial." At ——, 109 S.Ct. at 2661. Following this mandate, the District Court held a hearing, which spanned four days, on the feasibility of continuing the restraining order. At the conclusion of the hearing, the District Court directed that the restraining order remain in effect "because the Government had 'over-

---

4. The Supreme Court considered and rejected these claims. *See also Caplin & Drysdale, Chartered v. United States*, —— U.S. ——, 109 S.Ct. 2646, 105 L.Ed.2d 528 (1989) (identical constitutional claims raised by law firm seeking to exempt funds transferred for payment legal fees to it by client charged with CCE drug trafficking from restraining order for possible forfeiture rejected).

whelmingly established a likelihood' that the property in question would be forfeited at the end of trial." *Id.*[5]

The Supreme Court declined to consider whether a hearing must be held before imposition of a pretrial restraining order, even though the panel of the Court of Appeals ordered that such hearing be held, in response to which directive the District Court held a four-day hearing, as noted above. The High Court stated that given the United States' success on the Motion for a restraining order at the hearing and the failure of the Court of Appeals sitting *en banc* to address this procedural due process issue, it would be pointless to consider whether the Due Process Clause requires such a hearing and, if so, whether the hearing conducted in the District Court was adequate.

We do not read the above as an express or implied disapproval of the holding of a hearing of the type for which we now remand. In fact, the Supreme Court, in its holding, agreed with the finding of the District Court at the conclusion of the four-day hearing that the United States had satisfactorily discharged its burden of proving that the assets in question were forfeitable. Moreover, the Supreme Court limited its *dicta* to possible constitutional requirements rather than to a plain reading of the forfeitures statute.[6]

---

**5.** We pause to note only as a matter of information that Monsanto was ultimately tried and convicted of multiple violations of RICO and CCE as well as tax and firearm offenses. He proceeded to trial with counsel appointed under the Criminal Justice Act. After Monsanto's trial had commenced, the Court of Appeals vacated the panel opinion and granted reargument before the court *en banc*. During Monsanto's trial, a very divided Court of Appeals ordered modification of the restraining order to permit Monsanto to pay counsel fees from the restrained assets. Pursuant to this mandate, the trial court held a hearing at which it offered to permit Monsanto to use the restrained assets to hire private counsel. Monsanto refused the court's offer, and the trial continued with court-appointed counsel. After rendition of a verdict of guilty on the substantive charges, the jury returned a special verdict finding the restrained assets forfeitable beyond a reasonable doubt.

**6.** 21 U.S.C. § 853(e) essentially tracks the language of 42 Pa.C.S.A. § 6802(f), (g) and (h) with regard to the holding of an evidentiary hearing on the propriety of a pre-trial restraining order.

■ The Commonwealth further maintains that if it is successful in establishing at such a hearing that the funds are subject to forfeiture because of their illegal use or possession, the burden then shifts to the claimant(s), i.e., the law firm and/or Costopoulos, to prove that such illegal use or possession by Hess was without his/their reasonable knowledge or consent and that his/their acquisition of the funds was lawful. Section 6802 of the forfeitures statute specifically allocates this burden as follows:

> (j) Owner's burden of proof.—At the time of the hearing, if the Commonwealth produces evidence that the property in question was unlawfully used, possessed or otherwise subject to forfeiture under section 6801(a), the burden shall be on the claimant to show:
>
> > (1) That the claimant is the owner of the property....
> >
> > (2) That the claimant lawfully acquired the property.
> >
> > (3) That it was not unlawfully used or possessed by him. In the event that it shall appear that the property was unlawfully used or possessed *by a person other than the claimant,* then the claimant shall show that the unlawful use or possession was without his knowledge or consent. Such absence of knowledge or consent must be reasonable under the circumstances presented.

With regard to a hearing, subsection (i) provides: "(i) Hearing time set.—Upon the filing of a claim for the property setting forth a right of possession, the case shall be deemed at issue and a time shall be fixed for the hearing."

We believe, however, that the Commonwealth's argument regarding the allocation of the burden of proof, just like its statutory and constitutional assertions, is not ripe for adjudication at this juncture.

At this point in the proceedings, the trial court must ascertain, initially, whether the monies restrained are traceable to an illegal drug trafficking exchange so as to render these funds subject to forfeiture. It is for a determination of this threshold issue that we remand. If the Commonwealth is able to demonstrate to the satisfaction of the trial court at the evidentiary hearing to be held for this purpose

that the funds restrained are traceable to such an exchange, making them subject to forfeiture, then the restraining order will remain in effect until the conclusion of the forfeiture proceedings.

The burden of proof delineated in Section 6802(j) is triggered by the filing of a claim for property sought to be forfeited pursuant to subsection (i) thereof. At the hearing to be held on remand, the determination to be made is whether the restrained assets are traceable to an illegal drug exchange, thus subjecting them to forfeiture proceedings. If the Commonwealth successfully demonstrates that the subject assets are traceable to an illegal drug transaction, then the burden of proof shifts to Hess, and/or Costopoulos and/or the law firm as set forth in Section 6802(j).[7] In sum and for the above-stated reasons, we are remanding this matter to the trial court for the holding of an evidentiary hearing to determine the threshold concern whether the assets in question are traceable to any illegal drug exchange which would make these funds subject to forfeiture to the Commonwealth as provided by 42 Pa.C.S.A. § 6801.

Order of November 28, 1988, vacating the temporary restraining order of September 22, 1988, and dismissing the Motion of the Commonwealth for preservation of property is vacated. Matter remanded for proceedings consistent with this Opinion. Jurisdiction relinquished.[8]

7. We do not decide at this time whether the Motion to strike the Commonwealth's Motion for preservation of property and to lift the temporary restraining order filed on behalf of Hess by Costopoulos qualifies as a claim for property under Section 6802(i).

8. We are cognizant of decisions of the appellate courts of this Commonwealth decided under the former forfeitures provision of the Controlled Substance, Drug, Device and Cosmetic Act, 35 P.S. §§ 780–128 and 780–129. *See e.g., Commonwealth v. One 1985 Cadillac Seville,* 371 Pa.Super. 390, 538 A.2d 71 (1988); *Commonwealth v. Tate,* 371 Pa.Super. 611, 538 A.2d 903 (1988); *Commonwealth v. Fifteen thousand eight hundred thirty six dollars and eighty-five cents—Cash,* 354 Pa.Super. 279, 511 A.2d 871 (1986); *Commonwealth v. Graham,* 334 Pa.Super. 170, 482 A.2d 1277 (1984); *Commonwealth v. One (1) Chevrolet Box–Type Truck,* 126 Pa. Commw. 173, 559 A.2d 76 (1989); *Commonwealth v. One 1976 Oldsmobile Cutlass Supreme,* 85 Pa. Commw. 433, 482 A.2d 686 (1984). However, none of these cases involved the entry of a restraining order pursuant to a Commonwealth Motion to preserve property subject to forfeiture now provided

by the new drug forfeitures provision, 42 Pa.C.S.A. §§ 6802(f) and (g). The former legislation, contained as part of the Drug Act, itself, simply did not provide for a procedure whereby the Commonwealth could file an application with the court to have property preserved by the entry of a restraining order pending forfeiture. Even so, in those cases, forfeiture hearings were held at which the Commonwealth was permitted to present evidence concerning the forfeitability of the property in question. In *Commonwealth v. One (1) Chevrolet, supra,* Commonwealth Court remanded for the holding of a hearing to allow the Commonwealth to present its evidence.

We also recognize the existence of other cases involving appeals from denials or grants of applications for return of property which had been seized pretrial. The applications were filed pursuant to Pa.R.Crim.P. 324, and, except in one case, the property seized did not involve underlying drug-related charges. *See, e.g., Petition of McLaughlin,* 367 Pa.Super. 60, 532 A.2d 453 (1987) (involving Forfeiture and Condemnation of Vehicles Act, 35 P.S. § 831.1 *et seq.*); *Sugalski v. Cochran,* 365 Pa.Super. 370, 529 A.2d 1104 (1987) (involving 18 Pa.C.S.A. § 5513(b), confiscation of gambling devices, and Liquor Code provision, 47 Pa.C.S.A. § 6–602(e)); *Commonwealth v. Doranzo,* 365 Pa.Super. 129, 529 A.2d 6, *allocatur denied,* 517 Pa. 614, 538 A.2d 497 (1987); *Estate of Peetros v. County Detectives,* 341 Pa.Super. 558, 492 A.2d 6 (1985); *Petition of Maglisco,* 341 Pa.Super. 525, 491 A.2d 1381 (1985). Again, none of the above-cited cases involved the issuance of a restraining order pursuant to a Motion to preserve, although Pa.R.Crim.P. 324(b) does provide for forfeiture in the event the court determines that the property sought to be returned to the aggrieved person is contraband.