617 A.2d 307

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Joseph E. HESS, Appellant.**

Supreme Court of Pennsylvania.

Argued May 6, 1992.

Decided Nov. 12, 1992.

608

William C. Costopoulos, Lemoyne, for appellant.

Syndi L. Norris, Asst. Dist. Atty., J. Michael Eakin, Dist. Atty., Roseann Termini, Atty. Gen., for appellee.

Before NIX, C.J., and FLAHERTY, McDERMOTT, ZAPPALA, and CAPPY, JJ.

## OPINION

ZAPPALA, Justice.

On September 15, 1988, Appellant Joseph E. Hess was arrested by a Tri–County Narcotics Strike Force and charged with the sale and delivery of cocaine and conspiracy to sell and deliver the cocaine. A preliminary hearing was scheduled for September 22, 1988. Prior to the preliminary hearing, Mr. Hess retained William C. Costopoulos, Esquire, of the law firm of Kollas, Costopoulos, Foster and Fields to represent him on the criminal charges.

On September 22, 1988, the Commonwealth presented an ex parte Motion For Preservation Of Property Subject to Forfei-

ture, requesting that a temporary restraining order be issued to require the law firm to preserve all money or assets of value received from Mr. Hess for legal representation in his criminal case and to restrain the law firm from disposing of the assets without further order of court during pendency of the Commonwealth's forfeiture claim. The Commonwealth alleged that it was common knowledge that the law firm required the payment of a retainer prior to representation of any criminal defendant. The Commonwealth further alleged that its investigation disclosed that Mr. Hess did not have any visible means of amassing the amount of money necessary for payment of the required retainer other than funds derived from drug trafficking, and that the monies paid to the law firm were thereby forfeitable to the Commonwealth under 42 Pa. C.S.A. § 6801(a)(6)(i)(A).

A temporary restraining order was entered on September 22, 1988, by Judge Edgar B. Bayley enjoining Mr. Hess and the law firm from disposing of any assets furnished by Mr. Hess for retention of the law firm for legal services related to the criminal charges. The law firm was directed to preserve any such assets in its escrow account pending further order of court. The order was served on Mr. Hess and his counsel at the conclusion of the preliminary hearing on September 22, 1988. The temporary restraining order was to remain in effect until September 29, 1988, the date scheduled for a hearing on the Commonwealth's motion. The hearing date was continued to September 30, 1988, by the court with the agreement of the parties.

A motion to strike the Commonwealth's motion and to lift the temporary restraining order was filed on behalf of Mr. Hess on September 30, 1988. In the motion to strike, Mr. Hess raised various constitutional and statutory challenges to the Commonwealth's motion and the temporary restraining order. The motion to strike included an allegation, that is not in dispute, that the law firm had complied with the order dated September 22, 1988. With the court's permission, the Pennsylvania Association of Criminal Defense Lawyers intervened as amicus curiae and also filed a motion to vacate the

temporary restraining order, challenging the constitutionality of the statutory forfeiture provision and its applicability to Mr. Hess.

The constitutional challenges to the forfeiture statute were raised at the hearing on September 30, 1988. The trial judge inquired whether counsel for Mr. Hess wished to brief and argue the constitutional challenges as a threshold issue in the case. Mr. Hess's counsel requested an opportunity to do so before proceeding with any evidentiary matters regarding the payment of attorney's fees. The Commonwealth agreed as long as the temporary restraining order remained in effect. The trial court entered an order establishing a briefing schedule and argument date, and directed that the temporary restraining order would remain in effect pending a decision by the court. The trial court informed the parties that an additional hearing would be scheduled for the purpose of taking evidence if the court's consideration of the threshold legal issues did not ultimately resolve the matter.

By order dated November 28, 1988, the trial court vacated the temporary restraining order entered on September 22, 1988, and dismissed the Commonwealth's motion for preservation of property. For purposes of analyzing the statutory and constitutional claims raised by Mr. Hess, the parties and the trial court had proceeded on the assumption that the money paid by Mr. Hess as a retainer to the law firm for legal representation was obtained by him through illegal drug transactions. Noting that the Commonwealth did not allege or suggest that the retainer paid by Mr. Hess to the law firm was a sham or complicitous transaction, the trial court held that the retainer received by the law firm for legitimate criminal defense representation on the pending charges was not subject to forfeiture under 42 Pa.C.S.A. § 6801(a)(6)(i)(A).

The trial court framed the threshold issues as: (1) assuming that the money paid by Mr. Hess as a retainer to the law firm for legitimate criminal defense representation on pending charges was obtained by him through illegal drug transactions, is that money subject to forfeiture under 42 Pa.C.S.A. § 6801(a)(6)(i)(A); and (2) if so, whether such a forfeiture

would be violative of the federal and/or state constitutions. The trial court did not reach the second issue relating to the constitutional challenges, however, because of its disposition of the first issue. In construing the forfeiture statute, the trial court reasoned that the phrase "all proceeds traceable to such an exchange" used in the statute does not encompass monies derived from illegal drug transactions which are used by a defendant to pay a retainer for legitimate criminal defense representation. The trial court held that the legislative purpose of the forfeiture provision was to prevent those persons who have secured money or property through an illegal drug transaction from benefitting from such an exchange. The trial court concluded that the phrase was not used in the statute for the purposes of subjecting the assets of bona fide innocent third persons to forfeiture, including attorney's fees paid for legal representation.

In concluding that the legal retainer was not subject to forfeiture under the statute, the trial court reasoned that the payment of legal fees represents a valid contractual arrangement for the performance of services between attorney and client and that this contractual arrangement confers the status of a bona fide innocent third party upon the attorney whose assets are beyond the reach of the statute. The trial court stated,

We are not willing to conclude that an attorney *reasonably knows* that the money received as a retainer for criminal defense representation comes from a prohibited activity anymore than we would be willing to say that a doctor, a business person, or a department store is on such notice merely because the person being dealt with has been charged with a drug offense, or for that matter, any criminal offense. Payment of money for legitimate legal services under these circumstances, even though there is a possibility that it was obtained from an illegal source, does not constitute a sham transaction, or the "parking" of money with an attorney, and does not change the status of the attorney from a bona fide innocent person any more than it would change the status of the doctor, the business person

or the department store. The money received for the payment of legal services comes from a client who is presumed innocent. Contracting for the services of an attorney for legitimate criminal defense representation does not put the attorney in a position of complicity with the client and does not require that the attorney act as an investigator for the government.

Trial court Opinion, pp. 12–13 (emphasis supplied.) (footnotes deleted.) Attempts by the Commonwealth to seize assets from bona fide innocent third parties subsequent to the exchange of the assets in payment for goods or services were not permitted under the forfeiture statute.

The Superior Court reversed the trial court on appeal and remanded the matter for an evidentiary hearing. 389 Pa.Super. 39, 566 A.2d 605. The Superior Court did not address the substantive issues raised in the appeal on the basis that, unlike the trial court and the parties, it believed that the threshold consideration is to determine whether the assets paid to the law firm represent proceeds traceable to an exchange for a controlled substance in violation of the Controlled Substance, Drug, Device and Cosmetic Act, 35 P.S. § 780–101 et seq. In the Superior Court's view, this could only be accomplished by the holding of an evidentiary hearing into the source of the proceeds. The failure of the trial court to conduct an evidentiary hearing was declared to be an error necessitating the remand.

We granted the petition for allowance of appeal filed by Mr. Hess to address the following issues: (1) whether the Legislature intended to authorize pre-conviction restraints on the transfer of assets as payment for legitimate attorney's fees in enacting 42 Pa.C.S.A. § 6801; and (2) if so, whether such a forfeiture violates an accused's right to counsel afforded by the Sixth Amendment of the United States Constitution and Article I, Section 9 of the Pennsylvania Constitution, and due process rights afforded by the Fifth Amendment of the United States Constitution and Article I, Section 9 of the Pennsylvania Constitution. Delaying resolution of these issues pending a hearing to determine the source of the funds that Mr. Hess

paid to the law firm would serve no purpose. Proof of the fact that was assumed by the trial court before undertaking its analysis obviously would not alter the trial court's decision on the merits and would only serve to waste judicial assets. The Superior Court erred in reversing the trial court on that basis. Therefore, we will proceed to address the issues of first impression raised in this appeal.

We must determine first whether the Legislature intended to authorize pre-conviction restraints on the transfer of assets as payment for legitimate attorney's fees in enacting 42 Pa.C.S.A. § 6801. The forfeiture statute provides:

§ 6801. Loss of property rights to Commonwealth

(a) Forfeitures generally.—The following shall be subject to forfeiture to the Commonwealth and no property right shall exist in them:

* * * * * *

(6)(i) All of the following:

(A) Money, negotiable instruments, securities or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of The Controlled Substance, Drug, Device and Cosmetic Act, and all proceeds traceable to such an exchange.

(B) Money, negotiable instruments, securities or other things of value used or intended to be used to facilitate any violation of The Controlled Substance, Drug, Device and Cosmetic Act.

Mr. Hess contends that the Legislature did not intend the forfeiture statute to encompass the forfeiture of monies traceable to illegal drug transactions which have been paid to innocent third parties in the course of bona fide commercial dealings. The payment of attorney's fees for legal representation would not be subject to forfeiture under this construction unless the transaction was a sham. It is asserted that once the assets have been exchanged for a legitimate good or service provided by an innocent third party, the assets are no longer those of the defendant and may not be forfeited regardless of the source of those assets. In this respect, Mr.

Hess analogizes the payment for legal services to the payment for goods, such as a stereo, from a department store, asserting that the Commonwealth could not seek forfeiture of monies paid to the department store for the purchase of a stereo by a drug dealer.

The Commonwealth concedes that the forfeiture statute was not designed to hurt innocent third parties. Indeed, it does not seek forfeiture of the portion of the retainer for which services had been rendered prior to the attorney acquiring knowledge that the retainer was paid with illegally obtained funds. The Commonwealth shifts the focus away from the fact that the retainer had previously been paid to the attorney, emphasizing instead that a portion of the retainer was unearned when forfeiture of the fee was sought. The Commonwealth contends that attorney's fees are not exempt from forfeiture under the statute.

"The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S.A. § 1921(a). "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S.A. § 1921(b). The language of the forfeiture statute is plain and unambiguous. The Legislature broadly defined property interests subject to forfeiture, which encompasses funds paid to an attorney as a retainer for legal services.

Specific exceptions detailed in the statute include the following:

(ii) No property shall be forfeited under this paragraph, to the extent of the interest of an owner, by reason of any act or omission established by the owner to have been committed or omitted without the knowledge or consent of that owner. Such money and negotiable instruments found in close proximity to controlled substances possessed in violation of The Controlled Substance, Drug, Device and Cosmetic Act shall be rebuttably presumed to be proceeds derived from the selling of a controlled substance in violation of The Controlled Substance, Drug, Device and Cosmetic Act.

(iii) No valid lien or encumbrance on real property shall be subject to forfeiture or impairment under this paragraph. A lien which is fraudulent or intended to avoid forfeiture under this section shall be invalid.

42 Pa.C.S. § 6801(a)(6)(ii) and (iii). While these provisions do evince a legislative intent to protect innocent third parties, no exemption for attorney's fees can be construed from their inclusion. The forfeiture statute does not provide for an exemption for attorney's fees.

We must decide, therefore, whether an accused's right to counsel under the Sixth Amendment of the United States Constitution and Article I, Section 9 of the Pennsylvania Constitution and due process rights under the Fifth Amendment of the United States Constitution and Article I, Section 9 of the Pennsylvania Constitution are violated by the application of the forfeiture statute to attorney's fees.

## I. FEDERAL CONSTITUTION'S SIXTH AMENDMENT RIGHT TO COUNSEL AND DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT

The U.S. Supreme Court has addressed the issues of whether the federal drug forfeiture statute, 21 U.S.C. § 853, authorizes a district court to enter a pretrial order freezing assets in a defendant's possession, even where the defendant seeks to use those assets to pay an attorney, and whether such an order is permitted under the U.S. Constitution. In a 5–4 decision in *Caplin & Drysdale Chartered v. United States,* 491 U.S. 617, 109 S.Ct. 2646, 105 L.Ed.2d 528 (1989), the sharply divided Supreme Court held that neither the Fifth nor Sixth Amendments to the U.S. Constitution requires Congress to permit a defendant to use assets adjudged to be forfeitable to pay that defendant's legal fees.

In *Caplin,* a majority of the U.S. Supreme Court held that the federal forfeiture statute did not impermissibly burden a defendant's Sixth Amendment right to retain counsel of his choice. The majority reasoned that the statute deprived a defendant of any right, title, and interest in property obtained by illicit means. In the "relation-back" provision of the stat-

ute, "[a]ll right, title and interest in property" subject to criminal forfeiture "rests in the United States upon the commission of the act giving rise to forfeiture...." 21 U.S.C. § 853(c)[1]. The statute does not differentiate property that is contraband per se from derivative contraband. Utilizing this legal fiction, the majority concluded that a defendant cannot give good title to property in which he had a possessory interest to an attorney because title to any forfeitable assets rests in the United States at the time of the criminal act giving rise to forfeiture.

The majority stated, "There is no constitutional principle that gives one person the right to give another's property to a third party, even where the person seeking to complete the exchange wishes to do so in order to exercise a constitutionally protected right." *Caplin*, 491 U.S. at 627–628, 109 S.Ct. at 2654, 105 L.Ed.2d at 543. The majority's initial analysis of the defendant's property interest in forfeitable assets segued easily into its ultimate conclusion that "[a] defendant has no Sixth Amendment right to spend another person's money for services rendered by an attorney, even if those funds are the only way that the defendant will be able to retain the attorney of his choice." 491 U.S. at 625–626, 109 S.Ct. at 2652, 105 L.Ed.2d at 542.

The majority held that the federal forfeiture statute does not prevent a defendant from hiring the attorney of his choice or disqualify any attorney from serving as a defendant's counsel. "The amendment guarantees defendants in criminal cases the right to adequate representation, but those who do not have the means to hire their own lawyers have no cognizable complaint so long as they are adequately represented by attorneys appointed by the courts." 491 U.S. at 624, 109 S.Ct. at 2652, 105 L.Ed.2d at 541. Thus, while the Sixth Amendment guarantees a defendant the right to be represented by an attorney whom the defendant can afford to hire, the defendant may be deprived of that right by the government's

1. The Pennsylvania forfeiture statute does not contain a fictive "relation-back" provision.

retroactive seizure of assets that would have otherwise been available to secure legal representation.

Speaking for the four dissenting justices, Justice Blackmun stated, "Those jurists who have held forth against the result the majority reaches in these cases have been guided by one core insight: that it is unseemly and unjust for the Government to beggar those it prosecutes in order to disable their defense at trial." *Caplin* and *Monsanto,* 491 U.S. at 600, 109 S.Ct. at 2667, 105 L.Ed.2d at 512. While weakening the defendant's ability to hire counsel of his choice is advantageous for the government, the dissenters rejected the notion that it is a legitimate governmental interest that can defeat a constitutional right. Justice Blackmun stated,

> The Government claims a property interest in forfeitable assets, predicated on the relation-back provision, § 853(c), which employs a legal fiction to grant the Government title in all forfeitable property as of the date of the crime. The majority states: "Permitting a defendant to use assets for his private purposes that, under this provision, will become the property of the United States if conviction occurs, cannot be sanctioned." *Monsanto, ante,* 491 U.S., at 612–13, 109 S.Ct., at 2665. But the Government's insistence that it has a paramount interest in the defendant's resources "simply begs the constitutional question rather than answering it. Indeed, the ultimate constitutional issue might well be framed precisely as whether Congress may use this wholly fictive device of property law to cut off this fundamental right of the accused in a criminal case. If the right must yield here to countervailing governmental interests, the relation-back device undoubtedly could be used to implement the governmental interests, but surely it cannot serve as a substitute for them." *In re Forfeiture Hearing as to Caplin & Drysdale,* 837 F.2d 637, 652 (CA4 1988) (en banc) (dissenting opinion).

Furthermore, the relation-back fiction gives the Government no property interest whatsoever in the defendant's assets before the defendant is convicted. In most instances, the assets the Government attempts to reach by using the forfeiture provisions of the Act are derivative proceeds of

crime, property that was not itself acquired illegally, but was purchased with the profits of criminal activity. Prior to conviction, sole title to such assets—not merely possession, as is the case in the majority's bank robbery example, *Caplin & Drysdale, ante,* 491 U.S., at 624–28, 109 S.Ct., at 2652–2653—rests in the defendant; no other party has any present legal claim to them. Yet it is in the preconviction period that the forfeiture threat (or the force of a § 853(e)(1) restraining order) deprives the defendant of use of the assets to retain counsel. The Government's interest in the assets at the time of their restraint is no more than an interest in safeguarding fictive property rights, one which hardly weighs at all against the defendant's formidable Sixth Amendment right to retain counsel for his defense.

491 U.S. at 652–53, 109 S.Ct. at 2676–2677, 105 L.Ed.2d at 558–59.

In *Caplin* and *Monsanto,* the majority rejected not only the challenge to the forfeiture statute under the Sixth Amendment, but also the challenge made under the Due Process Clause of the Fifth Amendment. The majority did not perceive that the petitioner's due process claim added anything to his Sixth Amendment claim because the elements of the fair trial guaranteed by the Fifth Amendment are largely defined by the provisions of the Sixth Amendment. Having concluded that the Sixth Amendment is not offended by the forfeiture statute, the majority found no merit in the petitioner's Fifth Amendment claim.

Although the federal drug forfeiture statute is not identical to that of Pennsylvania, we conclude that the U.S. Supreme Court's decisions in *Caplin* and its companion case, *United States v. Monsanto,* 491 U.S. 600, 109 S.Ct. 2657, 105 L.Ed.2d 512 (1989) are dispositive of the federal constitutional issues raised by Mr. Hess in this appeal.

## II. RIGHT TO COUNSEL UNDER ARTICLE I, SECTION 9 OF THE PENNSYLVANIA CONSTITUTION

Mr. Hess asserts that the application of the Pennsylvania forfeiture provision to legitimate fees paid to an attorney

for criminal defense representation violates the right to counsel under Article I, Section 9 of the Pennsylvania Constitution. A state may provide through its constitution a basis for the rights and liberties of its citizens independent from that provided by the Federal Constitution. The decisions of the U.S. Supreme Court are not dispositive of questions regarding the rights of citizens of the Commonwealth of Pennsylvania under its own constitution.

In *Commonwealth v. Edmunds*, 526 Pa. 374, 586 A.2d 887 (1991), we stated:

Here in Pennsylvania, we have stated with increasing frequency that it is both important and necessary that we undertake an independent analysis of the Pennsylvania Constitution each time a provision of that fundamental document is implicated. Although we may accord weight to federal decisions where they "are found to be logically persuasive and well reasoned, paying due regard to precedent and the policies underlying specific constitutional guarantees," ... we are free to reject the conclusion of the U.S. Supreme Court so long as we remain faithful to the minimum guarantees established by the U.S. Constitution.

526 Pa. at 389–390, 586 A.2d at 894–895 (citation omitted.) "... [W]e are not bound to interpret the two provisions [of the state and federal constitutions] as if they were mirror images, even where the text is similar or identical." 526 Pa. at 391, 586 A.2d at 896.

A defendant has the constitutionally guaranteed right to be represented by counsel of his own choosing under Article I, Section 9 of the Pennsylvania Constitution. *Commonwealth v. Szuchon*, 506 Pa. 228, 484 A.2d 1365 (1984). The right to be represented by counsel of one's own choice is not absolute, however. The right to counsel may be impaired or eliminated by state regulation which is designed to provide for overriding state interests or individual constitutional guarantees which are in conflict with that right. *Pirillo v. Takiff*, 462 Pa. 511, 341 A.2d 896 (1975).

In balancing these conflicting interests, four factors must be considered: "(1) Whether the state interest sought to be achieved can be effectively accomplished in some manner which will not infringe upon interests protected by constitutional rights; (2) Whether the state interest is sufficiently compelling when compared with the interests affected, justifies any infringement of those interests; (3) Whether the state interest is sufficiently compelling to justify the degree of infringement that is necessary to effectuate that interest; (4) Whether the provision under challenge represents the narrowest possible infringement consistent with effectuating the state interest involved." *Moore v. Jamieson,* 451 Pa. 299, 310–311, 306 A.2d 283, 289 (1973).

The state interests advanced by the forfeiture statute are in eliminating the economic incentives of drug related activity to prevent the profits of such activity from being used to support future activity and in deterring criminal activity. Quintessentially, it is a punitive measure. No conviction is required, however, to trigger the punitive measure. Thus, despite the appeal of forfeiture as a means of stripping drug activity of its profits, the punitive aspect of the statute requires exacting scrutiny.

The purpose of seeking a restraining order to prohibit a defendant from disposing of assets that are subject to forfeiture is to prevent pre-conviction transfers to avoid forfeiture. This eliminates the possibility that criminal forfeiture sanctions could be avoided by transfers that were not arms length transactions. The state interest in preventing such transfers is not furthered, however, by depriving a defendant of assets prior to conviction that a defendant intends to use to obtain legal counsel.

Furthermore, the interests of the state can be effectively accomplished without infringing upon a defendant's right to counsel. The Commonwealth's interests in forfeiture are not hindered by the exclusion of legitimate attorney's fees. The assets used to retain counsel will be unavailable to a defendant after trial, even when a defendant is acquitted. Should a defendant be convicted, the Commonwealth will have only lost

a questionable opportunity to punish a defendant prior to his conviction.

The forfeiture statute does not represent the narrowest possible infringement consistent with effectuating the state's interest to the extent that it permits forfeiture of a defendant's assets needed to retain an attorney prior to conviction. "The right to counsel of one's own choosing is particularly significant because an individual facing criminal sanctions should have great confidence in his attorney." *Moore,* supra, 451 Pa. at 308, 306 A.2d at 288. (Citation omitted.) Although the right to counsel is subject to limitations, it may not be interfered with unnecessarily.

As an intervenor and amicus curiae, the Attorney General argues that if attorney's fees may not be forfeited under the statute, a defendant will pay his attorney with drug profits and preserve any other assets that are nonforfeitable, such as inheritance. The Attorney General's concern is unnecessary, however, because the trial court has the authority to conduct an evidentiary hearing to determine whether a defendant has assets that are nonforfeitable and available for the payment of attorney's fees. The trial court may enter an order restraining a defendant from using assets that are subject to forfeiture for the payment of attorney's fees until the defendant's nonforfeitable assets have been exhausted. This procedure will eliminate the maneuvering anticipated by the Attorney General without infringing upon the defendant's constitutionally protected right to an attorney. Because an evidentiary hearing was not held in this case, the Commonwealth may request a hearing on remand to determine if there are nonforfeitable assets available to Mr. Hess.

We hold that the state forfeiture statute violates Article I, Section 9 of the Pennsylvania Constitution insofar as it applies to the payment of attorney's fees for legitimate criminal defense representation prior to conviction. This decision rests firmly on state constitutional grounds. *See Michigan v. Long,* 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983). In view of our holding, we need not address Mr. Hess's claim that the forfeiture statute violates his due process rights. The order of

the Superior Court is reversed and the trial court's order is hereby reinstated.

LARSEN and PAPADAKOS, JJ., did not participate in the consideration or decision of this matter.

McDERMOTT, J., did not participate in the decision of this matter.