**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Donald C. HEATER, Appellant.**

Superior Court of Pennsylvania.

Argued Nov. 2, 2005.
Filed April 18, 2006.
Reargument Denied June 21, 2006.

Jeffrey G. Velander, Stroudsburg, for appellant.

Raymond J. Tonkin, Assistant District Attorney, Milford, for Commonwealth, appellee.

BEFORE: JOYCE, STEVENS, and McCAFFERY, JJ.

OPINION BY McCAFFERY, J.:

¶ 1 Appellant, Donald C. Heater, challenges his convictions for drug violations as well as a court order directing him to forfeit $42,085 in cash related to drug sales. Upon review, we affirm.

¶ 2 The facts and procedural history underlying this appeal are as follows. After a confidential informant executed several controlled buys of marijuana from Appellant's residence, police obtained a warrant and searched the residence on February 13, 2003. The search yielded sixty-one (61) grams of marijuana; drug paraphernalia, including a triple beam scale and a box of plastic baggies; and two caches of cash: $3,775 in a safe in Appellant's bedroom and $38,310 in a safe in his kitchen, totaling $42,085. All items, including the cash, were seized. Appellant was arrested and charged with possession with intent to deliver a controlled substance,[1] possession of a controlled substance,[2] and possession with intent to use

---

1. 35 Pa.C.S.A. § 780–113(a)(30).

2. 35 Pa.C.S.A. § 780–113(a)(16).

drug paraphernalia.[3]

¶ 3 On March 26, 2003, Appellant filed a petition for return of his cash property. The Commonwealth then filed a petition for forfeiture of the cash, pursuant to section 6801(a) of the Controlled Substances Forfeitures Act (Forfeiture Act).[4]

¶ 4 The criminal charges and the petitions concerning the seized cash were consolidated under a single criminal docket number. A bench trial, dealing with the criminal charges as well as the forfeiture issues, was held on May 21, 2004, and June 23, 2004. During trial, defense counsel attempted to cross-examine a police officer testifying for the Commonwealth concerning characteristics of the confidential informant. The court sustained the Commonwealth's objection to this line of questioning, based on the assertion that it could lead to identification of the informant. At the close of trial, the court found Appellant guilty of all three drug-related charges; ordered forfeiture of the entire $42,085 found in Appellant's residence; and denied Appellant's motion for return of property. Appellant was sentenced to serve two years' probation and to pay costs and fines. After Appellant's post-sentence motion for judgment of acquittal was denied, he filed this appeal, seeking a new trial as well as reversal of the forfeiture order.

¶ 5 Appellant raises six issues for our review, which we have reordered for ease of analysis:

1. Did the lower court abuse its discretion when it refused to permit defense counsel to question Commonwealth witnesses about the identity of the confidential informant?

2. Did the lower court err in convicting [Appellant] of the charges of possession with intent to deliver marijuana and possession with intent to use drug paraphernalia in that the Commonwealth failed to present sufficient evidence to convict him?

3. Did the trial court err in concluding that the $42,085 in U.S. currency found in Appellant's home constituted the proceeds of drug trafficking because it was not supported by substantial evidence in that a nexus was not established between the marijuana and the currency [?]

4. Did the lower court err in directing the forfeiture of $42,085 because it was unduly harsh in that it is grossly disproportionate to the gravity of Appellant's offense?

5. Did the lower court err in refusing to permit Appellant to retain from the seized funds an amount which is reasonable to pay for legal defense?

6. In the event that this honorable court concludes that the appeal in the forfeiture matter should have been filed exclusively with the Commonwealth Courts [sic] despite the fact that the criminal and forfeiture issues were joined for purposes at [sic] trial in the lower court, Appellant requests that this court transfer the forfeiture appeal to the Commonwealth Court.[5]

(Appellant's Brief at 4–5.)

■ ¶ 6 We first address Appellant's claim that the trial court erred by refusing to permit defense counsel to pose questions to the testifying police officers, the answers to which might have revealed the identity of the confidential informant. Defense counsel specifically sought to question a police officer concerning whether the confidential informant had been Appel-

---

3. 35 Pa.C.S.A. § 780–113(a)(32).

4. 42 Pa.C.S.A. §§ 6801–02.

5. This issue is moot, as we have exercised jurisdiction over the appeal of both the criminal and the forfeiture issues.

lant's employee at some time in the past and was, therefore, acquainted with him. Appellant claims to have inferred that the confidential informant was a Ms. Morgan, a woman who previously had served as one of his caregivers [6] and was thus acquainted with Appellant and familiar with his residence. The court refused to allow this line of questioning, after the Commonwealth objected, because the testimony was getting too close to identifying the informant. (*See* Notes of Testimony, ("N.T."), 5/21/04, at 87–88; R.R. 115a–116a).

¶ 7 We review the trial court's decision to limit questions that would reveal the informant's identify under the standard of abuse of discretion. *See Commonwealth v. Carter*, 208 Pa.Super. 245, 222 A.2d 475, 478 (1966), *rev'd on other grounds*, 427 Pa. 53, 233 A.2d 284 (1967). Our Supreme Court has recognized "the importance of the Commonwealth's qualified privilege to maintain the confidentiality of an informant in order to preserve the public's interest in effective law enforcement." *Commonwealth v. Bing*, 551 Pa. 659, 664, 713 A.2d 56, 58 (1998). There is no fixed rule regarding when disclosure of the identity of a confidential informant is justifiable; rather, the court must balance "the public interest in protecting the flow of information against the individual's right to prepare his defense." *Id.* at 663, 713 A.2d at 58 (quoting *Commonwealth v. Carter*, 427 Pa. 53, 59, 233 A.2d 284, 287 (1967) (citations omitted)). In applying this balancing test, the court must take into consideration a variety of case-specific factors, including "the crime charged, the possible defenses, the possible significance of the informer's testimony and other relevant factors." *Id.* at 664, 233 A.2d 284, 713 A.2d at 58 (quoting *Carter*, 427 Pa. at 59, 233 A.2d at 287 (citation omitted)). The defendant must establish as an initial matter that revelation of the informant's identity is both reasonable and material to his or her defense. *Id.; Commonwealth v. Belenky*, 777 A.2d 483, 488–89 (Pa.Super.2001).

¶ 8 Under certain circumstances, our Supreme Court has held that the identity of a confidential informant should be revealed. *See Commonwealth v. Payne*, 540 Pa. 54, 59–60, 656 A.2d 77, 79–80 (1994); *Carter*, 427 Pa. at 61, 233 A.2d at 288. In both *Payne* and *Carter*, the Commonwealth's case was based upon the testimony of one or two police officers who had seen the perpetrator on only one occasion, and the defense strategy was to assert that the defendant had been mistakenly identified. In each case, a confidential informant had also witnessed the drug offense for which the defendant was being tried, and the defense wanted to examine the informant-witness. The Court held that the risk of misidentification of the defendant under these circumstances militated in favor of revealing the identity of the confidential informant and outweighed the factors against revelation.

¶ 9 In the case *sub judice*, misidentification of Appellant by the police was never an aspect of the defense, and indeed was never an issue at all. As Appellant did not assert a misidentification of himself by the officers, his reliance on *Bing, Payne,* and *Carter* is misplaced. Applying the balancing test under these precedents does not aid Appellant because his defense strategy was entirely different.

¶ 10 Appellant based his defense upon his contention that the marijuana found in his residence had been supplied to him by his previous caregiver, Ms. Morgan, who he assumed was the confidential informant. (Appellant's Brief at 32). Appellant testified that Morgan had sold him marijuana on three occasions, and that he had never

---

**6.** Appellant is a quadriplegic who receives in-home care from several caregivers.

sold marijuana to her or to anyone else. Appellant's defense strategy was clear, and there was no showing that the identification of the informant was material to Appellant's defense that Morgan had sold him marijuana or to his assertion that he had never sold marijuana to anyone. Furthermore, whether the informant was or was not personally familiar with Appellant because of possible service as his former employee was also not material to Appellant's defense. In sustaining the Commonwealth's objection, the trial court neither circumscribed Appellant's defense strategy nor hampered his ability to defend himself. We determine that it was proper for the trial court to refuse to allow a line of questioning that might have revealed the identity of the confidential informant under these circumstances.

¶ 11 We next address Appellant's claim that the evidence was insufficient to sustain his convictions. A challenge to the sufficiency of the evidence is a question of law. *Commonwealth v. Widmer*, 560 Pa. 308, 319, 744 A.2d 745, 751 (2000). In reviewing a sufficiency challenge, "[w]e must determine whether the evidence, and all reasonable inferences deducible from that, viewed in the light most favorable to the Commonwealth as verdict-winner, are sufficient to establish all the elements of the offense beyond a reasonable doubt." *Commonwealth v. Butler*, 856 A.2d 131, 135 (Pa.Super.2004) (quoting *Commonwealth v. Clark*, 761 A.2d 190, 192 (Pa.Super.2000)). "[W]e may not weigh the evidence and substitute our judgment for that of the fact-finder." *Commonwealth v. Cunningham*, 805 A.2d 566, 571 (Pa.Super.2002). Issues of witness credibility are the province of the fact-finder, not the appellate court. *Commonwealth v. Wright*, 867 A.2d 1265, 1267 (Pa.Super.2005). However, "[w]here the evidence offered to support the verdict is in

contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law." *Widmer, supra.*

¶ 12 When the offense at issue is possession with intent to deliver a controlled substance, the fact-finder may infer intent to deliver drugs from the facts and circumstances surrounding the case. *Commonwealth v. Kirkland*, 831 A.2d 607, 611 (Pa.Super.2003), *appeal denied*, 577 Pa. 712, 847 A.2d 1280 (2004). Relevant factors in establishing intent include the quantity of drugs possessed, the manner of packaging, the absence of paraphernalia for drug use, the behavior of the defendant, the presence of large amounts of cash, and expert opinion testimony. *Commonwealth v. Johnson*, 782 A.2d 1040, 1041 (Pa.Super.2001); *Commonwealth v. Jackson*, 435 Pa.Super. 410, 645 A.2d 1366, 1368 (1994).

¶ 13 In the case *sub judice*, our review of the trial testimony and the evidence presented, viewed in the light most favorable to the Commonwealth as the verdict-winner, reveals sufficient evidence to support Appellant's convictions for possession with intent to deliver marijuana and possession with intent to use drug paraphernalia.[7] Five police officers testified for the Commonwealth. Their testimony established the following: a confidential informant made three controlled purchases of marijuana from Appellant; ten bags of marijuana, containing one-quarter ounce each, as well as two larger, empty bags containing only marijuana residue, were found in a locked safe near Appellant's bed; in the same safe police found $3775 in cash, including $140 in recorded bills which had been supplied to the informant for the controlled buys; in a larger locked safe in Appellant's kitchen, police found $38,310 in

---

7. Appellant did not challenge his conviction for possession of marijuana.

cash, which also included some recorded bills from the controlled buys; a triple beam scale and a box of plastic baggies were found in a closet on the second floor of Appellant's residence. Finally, in the safe in Appellant's bedroom, police found a paper on which were written dates, numbers, totals, and dollar amounts, with notations that certain amounts had been paid. One officer testified that in his experience, this paper was consistent with a drug dealer's record of receipts and sales.

¶ 14 Appellant testified and offered alternative explanations for each piece of evidence. He inferred that the confidential informant was one of his caregivers who owed him money, and thus gave him the recorded bills to repay her debt. He further testified to the following: that he used marijuana for medical purposes, to relieve pain from his disability; that he used the scale for weighing gun powder when he reloaded his own cartridges for shooting; that he obtained cash from workers' compensation, insurance, tenants' rents, and repair of motors. Finally, to support his averments of personal use of marijuana, Appellant testified that he kept a pipe and some rolling papers in a can on the headboard of his bed; however, the Commonwealth presented no testimony that drug paraphernalia consistent with personal use of marijuana had been found in Appellant's residence.

¶ 15 Presented with conflicting testimony, the trial court was required to make a credibility determination, and it found that Appellant's testimony was not credible. As an appellate court, we defer to the credibility determinations of the fact-finder. *Commonwealth v. Wright,* 867 A.2d 1265, 1267 (Pa.Super.2005), *appeal denied,* 583 Pa. 695, 879 A.2d 783 (2005), *cert. denied,* — U.S. ——, 126 S.Ct. 1047, 163 L.Ed.2d 879 (2006). There was competent evidence to establish beyond a reasonable

doubt that Appellant possessed marijuana with the intent to deliver it and that he possessed the scale and baggies with the intent to use them in his drug trade. Therefore, we determine that there was sufficient evidence to sustain Appellant's convictions.

 ¶ 16 We next address Appellant's contentions that the trial court erred in ordering forfeiture of the $42,085 in cash found in Appellant's residence. Our standard of review in an appeal from a forfeiture proceeding is limited. We review only to determine "whether the findings of fact made by the trial court are supported by substantial evidence, and whether the trial court abused its discretion or committed an error of law." *Commonwealth v. $6,425.00 Seized from Esquilin,* 583 Pa. 544, 554, 880 A.2d 523, 529 (2005).

¶ 17 The Forfeiture Act provides, *inter alia,* for the forfeiture of money that has been exchanged or is intended to be exchanged for illegal drugs or that has been used or is intended to be used to facilitate any violation of the Controlled Substance, Drug, Device and Cosmetic Act (Controlled Substance Act).[8] *Id.* (citing 42 Pa. C.S.A. § 6801(a)(6)(i)). In addition, money that is found in close proximity to drugs possessed in violation of the Controlled Substance Act "shall be rebuttably presumed to be proceeds derived from the selling of a controlled substance in violation of the [Controlled Substance Act]." *Id.* at 555, 880 A.2d at 529 (quoting 42 Pa. C.S.A. § 6801(a)(6)(ii)). The goal of the Forfeiture Act is to eliminate economic incentives of drug-related activity and thereby deter such activity. *Commonwealth v. Hess,* 532 Pa. 607, 621, 617 A.2d 307, 314 (1992).

8. 35 Pa.C.S.A. §§ 780–101—780–144.

¶ 18 Proceedings under the Forfeiture Act are "civil in form, but quasi-criminal in character." *Commonwealth v. Alston,* 722 A.2d 161, 162 n. 1 (Pa.Super.1998) (quoting *Commonwealth v. Landy,* 240 Pa.Super. 458, 362 A.2d 999, 1005 (1976)). Consistent with their civil form, forfeiture proceedings apply shifting burdens of proof. The Commonwealth has the initial burden of proving that there is a nexus between the money it seeks to have forfeited and a violation of the Controlled Substance Act. *$6,425.00 Seized from Esquilin,* at 555, 880 A.2d at 529. The applicable evidentiary standard is preponderance of the evidence, which is tantamount to a "more likely than not" standard. *Id.* Once the Commonwealth has sustained its initial burden of proving a nexus between the money and drug activity, the burden shifts to the claimant to rebut the presumption that the money is subject to forfeiture. The claimant must establish that "(1) he owned the money; (2) he lawfully acquired it; and (3) it was not unlawfully used or possessed by him." *Id.* at 556, 880 A.2d at 530.

¶ 19 Based on the above principles, our Supreme Court recently reinstated a trial court's forfeiture order that had been reversed by the Commonwealth Court. In *$6,425.00 Seized from Esquilin,* the appellee and a companion, Burgos, were observed selling cocaine on the street. Police observed Burgos distribute the drug to three customers, take money from them, and immediately thereafter hand the money to the appellee. Upon arrest, the appellee had $6,425.00 in cash on his person. The cash included sixty-nine twenty-dollar bills, consistent with the conclusion that the appellee and his companion had been selling cocaine in individual bags worth $20.00 each. The trial court ordered the entire $6,425.00 forfeited, finding that the Commonwealth had established a nexus between the money seized and the sale of cocaine and that the appellee had not es-

tablished that the money had been lawfully acquired. On appeal, the Commonwealth Court reversed the forfeiture order as it applied to all but $60 of the total. The Commonwealth Court's rationale was that the Commonwealth had shown a nexus between drug dealing and only the amount of money involved in the three drug transactions which had been observed by police. As the three drug sales that the officers observed were estimated to involve only $60, the Commonwealth Court affirmed the forfeiture of this amount, but reversed the forfeiture order as it applied to the remaining $6,365.00. *See $6,425.00 Seized from Esquilin,* at 549–50, 880 A.2d at 526–27.

¶ 20 In reversing the Commonwealth Court's order, our Supreme Court emphasized that under the proper evidentiary standard of preponderance of the evidence, the Commonwealth needed to prove only that it was more likely than not that there was a nexus between the money and the drug trade. *Id.* at 555, 558–59, 880 A.2d at 529, 531. In addition, the Court reiterated that the trial court must make its determination based on an evaluation of the totality of the circumstances, mindful that circumstantial evidence can be sufficient to establish the requisite nexus. *Id.* at 560, 880 A.2d at 532–33. Significant facts in the Court's view were that the appellee and Burgos had been observed in the act of selling cocaine, in bags worth $20 each, and that the appellee had numerous twenty dollar bills in his pocket. The trial court's conclusion that *all* of the cash in the appellee's pocket was related to the drug trade did not require that the police observe enough sales to account for the entire sum of money. *Id.* at 558–60, 880 A.2d at 531–32. Although the Court acknowledged that the evidence might not have been sufficient to establish a nexus between drug dealing and the entire amount of the appellee's cash *beyond a*

*reasonable doubt,* it *was* sufficient under the Forfeiture Act's preponderance of the evidence standard. *Id.* at 558, 880 A.2d at 531.

¶ 21 In addition, our Supreme Court found no error in the trial court's invocation of the "close proximity" provision of the Forfeiture Act, by which money found in close proximity to drugs is rebuttably presumed to be proceeds from drug sales. 42 Pa.C.S.A. § 6801(a)(6)(ii). Although the appellee did not have any drugs on his person at the time of his arrest, his companion, Burgos, was in possession of cocaine. In the transactions that police observed, when a customer would buy a bag of cocaine, Burgos would take the purchase money and immediately hand it to the appellee. *$6,425.00 Seized from Esquilin,* 583 Pa. at 559–60, 880 A.2d at 532. Since the appellee and his companion Burgos were acting in concert during the drug transactions, the money found on the appellee's person was in "close proximity", for purposes of the statute, to the cocaine on his companion's person. *Id.*

¶ 22 After determining that the Commonwealth had sustained its initial burden of establishing a nexus between the appellee's cash and the drug trade, our Supreme Court then addressed whether the appellee had sustained the burden that had shifted to him of proving an innocent source for the money. *Id.* at 563–65, 880 A.2d at 534–35. The Court cited with approval the trial court's conclusion that the appellee had utterly failed to show that the cash had been lawfully acquired. Although the appellee had presented nontestimonial evidence to the effect that he had worked for the past four months at a job paying $10.50 per hour, and that the seized cash was to be used to repair a house he had just purchased, he presented no documentation for either the job or for the house purchase. The appellee also had presented evidence that, two weeks before

his arrest, he had withdrawn $5,300.00 from the bank account of the mother of his children. The trial court concluded that this evidence actually suggested money laundering, since no evidence had been presented as to the source of the money, and it had been deposited one day before it was withdrawn from a bank account that generally contained a low average balance. Our Supreme Court found no error in the trial court's conclusion that the appellee's explanations for the source of his cash were not credible, and, accordingly, reinstated the forfeiture order. *Id.* at 563–66, 880 A.2d at 534–36. In *dicta,* the Court noted that a trial court's credibility determinations deserve deference and may be dispositive in forfeiture cases, as in other types of cases. *Id.* at 558 n. 7, 880 A.2d at 531 n. 7.

¶ 23 In the case *sub judice,* Appellant contends that the Commonwealth failed to sustain its initial burden of establishing a nexus between the marijuana sales and the cash found in Appellant's residence. The Commonwealth presented the following evidence to show the requisite nexus: a confidential informant made three purchases of marijuana from Appellant; the recorded bills given to the informant as purchase money were found in two safes in Appellant's residence, commingled with the rest of the cash seized; in the smaller of the safes, which was in Appellant's bedroom, police also found ten quarter-ounce bags of marijuana, several larger bags containing marijuana residue, and two papers that appeared to record sales for cash; a triple beam scale and a box of sandwich bags were found in a closet in Appellant's residence. Based upon this substantial evidence, we determine that the trial court properly concluded that the Commonwealth had sustained its initial burden.

¶ 24 Appellant did attempt to prove that he had lawfully acquired the seized cash,

primarily by testifying that he had received cash as rent from his tenants and from the sale of motorized vehicles. (N.T., 6/23/04, at 79, 121; R.R. at 210(a), 252(a)). However, Appellant presented no documentation for cash received, and the trial court did not find his testimony to be credible. Because we must defer to the trial court's credibility determination that Appellant did not sustain his burden of proving that he had acquired the cash lawfully, we determine that the trial court properly concluded that the evidence did support a forfeiture of the entire $42,085.

¶ 25 Appellant's second allegation of error with regard to the trial court's forfeiture order is that the cash forfeited was not proportional to the value of the marijuana seized. Our Supreme Court has held that the "gross disproportionality" test of *United States v. Bajakajian*, 524 U.S. 321, 118 S.Ct. 2028, 141 L.Ed.2d 314 (1998) applies to all punitive forfeitures. *Commonwealth v. Real Property and Improvements Commonly Known as 5444 Spruce Street*, 574 Pa. 423, 435, 832 A.2d 396, 403 (2003). Under the *Bajakajian* test, "[t]he amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish." *Id.* at 431–32, 832 A.2d at 401 (quoting *Bajakajian, supra* at 334, 118 S.Ct. 2028). If the amount of the forfeiture is grossly disproportional to the gravity of the offense, then it violates the Excessive Fines Clause of the Eighth Amendment to the United States Constitution. *Id.* (citing *Bajakajian, supra* at 333–37, 118 S.Ct. 2028).

¶ 26 Appellant contends that the forfeiture to which he was subject ($42,085) is disproportional to the small amount of marijuana seized from his residence. However, Appellant has ignored the fact that the trial court determined that *all* of the seized cash constituted proceeds of illegal drug transactions. (Trial Court Opinion, dated 5/16/05, at 2). As set forth above, we have already determined that the trial court did not err in reaching this conclusion. Since *all* of the cash was determined to have been generated from drug transactions, then *all* of the cash was subject to forfeiture. Proportionality of the forfeited cash to the amount of marijuana actually found in the residence *at the time of the search warrant* is not required. *See Commonwealth v. $23,320.00 U.S. Currency*, 733 A.2d 693, 699 (Pa.Cmwlth.1999) (finding no disproportionality in the forfeiture of seized currency that was determined to represent the proceeds of a drug offense, even though no drugs had been seized concurrently). Appellant's claim of lack of proportionality in the forfeiture of the $42,085 in cash thus has no merit.

¶ 27 Appellant's final claim is that the trial court erred in refusing to permit him to pay his attorney using a portion of his forfeited funds. Based on Article I, Section 9 of the Pennsylvania Constitution, our Supreme Court has held that the portion of a defendant's assets necessary to retain an attorney prior to conviction may not be subject to forfeiture. *Commonwealth v. Hess*, 532 Pa. 607, 620–22, 617 A.2d 307, 314–15 (1992). However, there is an important caveat to this holding: the trial court may, upon determining that the defendant has nonforfeitable assets available for payment of attorneys' fees, issue an order requiring the defendant to exhaust his nonforfeitable assets prior to using any forfeitable assets for payment of attorneys' fees. *Id.* at 621–22, 617 A.2d at 314.

¶ 28 In the case *sub judice*, the trial court made the factual finding that Appellant did have access to nonforfeitable funds, *i.e.* from current income and from settlement of a lawsuit, that were available to pay attorneys' fees. (Court Order,

6/23/04, addressing Petition for Return of Property).[9] Our review of the record reveals that there is testimonial evidence to support this determination: Appellant testified that he collects approximately $1,650 a month in rent from his tenants, and that he also earns money from the repair and sale of vehicles. (N.T., 6/23/04, at 79, 121; R.R. at 210(a), 252(a)). Appellant also testified that he had received approximately $80,000 from the settlement of a lawsuit, unrelated to the current proceedings, that was reached after his arrest. (*Id.* at 124–125, 132; R.R. 255(a)–56(a), 263(a)).[10] We determine that this aggregate testimony constitutes substantial evidence of record to support the trial court's conclusion that Appellant did have non-forfeitable assets with which to pay his attorney.

¶ 29 Based on the foregoing analysis, we hold that the evidence was sufficient to sustain Appellant's convictions, and that the trial court acted properly in ordering the forfeiture of the $42,085. Accordingly, we affirm the order.

¶ 30 Order affirmed.

---

**9.** In addition, Appellant testified that he had funds in an account in his mother's name, from which she paid all of his bills. (N.T., 6/23/04, at 129; R.R. at 260(a)).

**10.** Appellant testified that he purchased a motor home approximately two months prior to trial, using his $80,000 proceeds from that settlement. At the time of trial, Appellant still owned the vehicle, which was parked in Appellant's parking lot. (N.T., 6/23/04, at 125–26; R.R. at 256(a)–57(a)).