J-S14045-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| WILLIE PEREZ, JR. | |
| Appellant | No. 934 MDA 2015 |

Appeal from the Judgment of Sentence April 30, 2015
In the Court of Common Pleas of York County
Criminal Division at No(s): CP-67-CR-0003151-2014

BEFORE:  FORD ELLIOTT, P.J.E., PANELLA, J., and STEVENS, P.J.E.*

MEMORANDUM BY STEVENS, P.J.E.:          **FILED FEBRUARY 17, 2016**

Appellant Willie Perez, Jr. appeals from the judgment of sentence entered in the Court of Common Pleas of York County on April 30, 2015, by the Honorable Richard K. Renn.  Upon our review of the record, we affirm.

The trial court summarized the facts underlying Appellant's convictions as revealed at a jury trial held on March 12th-13th, 2015, as follows:

> After explaining what a CI is and how a controlled buy is conducted, Detective Russell Schauer testified that his role on the night of March 10, 2014 was to take pictures of the controlled buy. N.T. 3/12-3/13/2015 at 107-11. Detective Schauer said that he was informed by his colleague, Officer Adam Bruckhart, that a controlled buy involving the Appellant was to occur later that night. Id. at 112. Detective Schauer did not actually speak to the CI and he was not involved in the phone conversations between the Appellant, CI, and Officer Bruckhart; however, he was briefed on what was to happen. Id. at 113. Detective Schauer was informed that the CI would meet the Appellant at 750 East Princess Street (Pak's Grocery), buy cocaine and a firearm, and then meet officers at a pre-selected location. Id. at 112-13.

*Former Justice specially assigned to the Superior Court.

Detective Schauer explained that he was parked on the east side of South Sherman Street, which was about 30 yards south of East Princess Street; the grocery store was to his west. N.T. 3/12-3/13/2015 at 114. While waiting at that location, Detective Schauer testified that Officer Bruckhart radioed to him that the CI (and his vehicle) had been searched, and he was also given official funds. Id. Detective Schauer observed the CI arrive at Pak's around 5:30PM. Id. at 115. The CI parked east pointed in Detective Schauer's direction. Id.

From his location, Detective Schauer testified that he observed a black Honda CRV enter Pak's parking lot and park directly beside the CI's vehicle. N.T. 3/12-3/13/2015 at 116-17. The driver of the Honda was identified as the Appellant. Id. at 117. The Appellant exited his vehicle and got into the front passenger seat of the CI's vehicle. Id. About a minute or two later, the Appellant exited the vehicle. Id. The Appellant leaned into his vehicle, walked back to the CI's vehicle, leaned in, and then returned to his trunk. Id. at 119. The Appellant opened his trunk, walked back to the CI's vehicle, leaned it, [sic] and then returned to his Honda CRV. Id. Then, the Appellant drove away; the entire incident took three to five minutes. Id. at 119,127. The photographs Detective Schauer took that night were produced for the jury.

On cross-examination, Detective Schauer testified that this particular controlled buy was a "buy-walk," which meant the officers did not arrest the suspect on the spot. N.T. 3/12-3/13/2015 at 129. Detective Schauer also testified that he personally did not witness the search of the CI or the CI's vehicle. Id. at 132-33. He also admitted that at no time did he see the Appellant with a gun or white plastic bag in his hand. Id. at 146-47.

Trooper Justin Dembowski was also conducting surveillance on the night of March 10, 2014. N.T. 3/12-3/13/2015 at 157. He testified that he was positioned about a half a block away from Pak's. Id. From his vantage point, Trooper Dembowski observed the Appellant's vehicle pull into a parking space next to the CI's vehicle. Id. at 159. Trooper Dembowski saw the Appellant exit his vehicle and get into the CI's vehicle and remain there for a short time. Id. at 160. He saw the Appellant exit the CI's vehicle, go back to his vehicle, then go back to the CI's vehicle, and then finally go back to his trunk. Id. at 160-61. Trooper Dembowski saw the Appellant carrying a white object from his trunk to the CI's vehicle where he leaned in the front passenger side door. Id. at 161. The

Appellant then left in his SUV. Id. Like Detective Schauer, Trooper Dembowski testified that the entire incident lasted only a few minutes. Id. at 162.

On cross-examination, Trooper Dembowski maintained that nothing obstructed his view of the transaction. N.T. 3/12 - 3/13/2015 at 165-67. Like Detective Schauer, Trooper Dembowski did not create a supplemental police report. Id. at 168-69. Trooper Dembowski did not know what this white object was that he observed. Id. at 171.

The next witness for the Commonwealth was the CI, Kevin Real. N.T. 3/12-3/13/2015 at 196. In April of 2013, Mr. Real was arrested on two counts of delivery of cocaine and criminal conspiracy to deliver cocaine, which is how he came in contact with Officer Bruckhart. Id. at 196-97. On the evening of March 10, 2014, Mr. Real contacted Officer Bruckhart about purchasing drugs from an individual with a streetname of "Animal."[5] Id. at 197. At Officer Bruckhart's request, Mr. Real called the Appellant to set up the buy. Id. at 199. The Appellant agreed to sell Mr. Real a half ounce of cocaine and a firearm for a total price of $1150. Id. at 200-01.

Mr. Real testified that Officer Bruckhart gave him the official funds and searched his person and his car. N.T. 3-12-3/13/2015 at 201-02. After being searched, Officer Bruckhart stayed with him until it was time to meet the Appellant for the buy. Id. at 202. Mr. Real arrived at the location first, and about 10 to 15 minutes after he arrived the Appellant called him. Id. at 203. The Appellant arrived shortly thereafter, and got into Mr. Real's car. Id. Mr. Real testified that he gave the Appellant the $1150 in official funds and the Appellant took it and went back to his SUV. Id. When he came back to Mr. Real's car the Appellant had the cocaine, which he put in his center console. Id. The Appellant then got out of Mr. Real's car and when [sic] to the trunk of his SUV where he got the firearm and placed it in Mr. Real's car. Id. Mr. Real testified that the gun was wrapped in something white. Id. at 206.

On cross-examination, Mr. Real testified that he had known the Appellant for roughly two years before this incident occurred. N.T. 3/12-3/13/2015 at 210. With respect to the search of his person, Mr. Real stated Officer Bruckhart did not strip search him or conduct a body cavity search. Id. at 215. Mr. Real also denied having a secret compartment in his car. Id. at 217-18. Lastly, Mr. Real testified that after he was arrested in 2013 he decided to make some positive changes in his life, which is why he agreed to become a CI. Id. at 224 -25.

Officer Adam Bruckhart testified that Mr. Real informed him that he would be able to purchase cocaine and a firearm from an individual named "Animal." N.T. 3/12- 3/13/2015 at 232. After some investigation, Officer Bruckhart was able to determine that "Animal" was in fact the Appellant. Id. at 232-33. On March 10, 2014, Officer Bruckhart met with Mr. Real and instructed him to call the Appellant; Mr. Real complied. Id. Although Officer Bruckhart was present for the call, Mr. Real did not put the conversation on speaker phone. Id. After the deal was in place, Officer Bruckhart briefed the other members of the Drug Task Force on the plan. Id. at 234-35. Officer Bruckhart testified that the [sic] searched Mr. Real and his vehicle and found no drugs and no firearms. Id. at 237.

Officer Bruckhart followed Mr. Real to the location and parked his vehicle approximately a half a block away on Princess Street. N.T. 3/12-3/13/2015 at 238. Officer Bruckhart testified that from his vantage point he could not tell if the individual in the black SUV was the Appellant, but that he did see the driver interacting with Mr. Real, the CI. Id. at 238 -39. After receiving a call from Mr. Real indicating the deal was complete, Officer Bruckhart met Mr. Real back at the Drug Task Force building. Id. at 239-40. Mr. Real and his car were searched again; the cocaine was found in the center console and the gun was found underneath the front passenger seat.[6]

On cross -examination, Officer Bruckhart explained that he made the decision not to arrest the Appellant on the spot because it could have jeopardized other investigations that Mr. Real was working on. N.T. 3/12-3/13/2015 at 258-59. Officer Bruckhart also testified that it was his understanding that as long as Mr. Real cooperated through trial his open charges would be dismissed. Id. at 262 -63. However, evidence was introduced that Mr. Real's charges were dismissed March 28, 2014, approximately two weeks after the controlled buy with the Appellant. Id. at 263.

Finally, the Commonwealth presented two more stipulations. The first one being that the Appellant was a person prohibited by law to possess a firearm. N.T. 3/12-3/13/2015 at 269. The second one being that the Appellant did not have a valid license to carry a concealed firearm or transport one in a vehicle. Id. The Commonwealth rested, and the Appellant chose not to present any testimony. Id. at 276.

___

[5] Mr. Real knew that the Appellant went by that street name. N.T. 3/12-3/13/2015 at 198.

[6] The parties stipulated that the substance found in the center console was cocaine weighing 15.88 grams. N.T. 3/12. 3/13/2015 at 243. The parties also agreed that the firearm recovered from the car was capable of discharging the kind of ammunition for which it was manufactured. Id. at 244.45

Trial Court Opinion, 9/1/15, at 4-8.

Having heard this evidence, on March 13, 2015, a jury convicted Appellant of one count each of Manufacture, delivery, or possession with intent to manufacture or deliver a controlled substance (cocaine) ("PWID"), Firearms not to be carried without a license, and Persons not to possess, use, manufacture control, sell or transfer firearms.[1] On April 30, 2015, Appellant was sentenced to an aggregate term of four years to eight years in prison, and on May 29, 2015, he filed a timely notice of appeal. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant presents one question for our review: "Did the trial court err in holding that the Commonwealth presented sufficient evidence to support the verdict on the charges of Possession with Intent to Deliver a Controlled Substance and Possession of a Firearm?" Brief for Appellant at 4. Appellant specifies that he is challenging only the element of possession contained in each of the aforementioned charges as he was never in possession of controlled substances or a firearm. *Id*. at 10. He maintains that Mr. Real's

_____

[1] 35 Pa.C.S.A. § 780-113(a)(30); 18 Pa.C.S.A. § 6106(a)(1); 18 Pa.C.S.A. § 6105(a)(1), respectively.

testimony to the contrary is suspect because of his representation that he agreed to work with police officers because he wanted to turn his life around. He claims Mr. Real's dishonesty was illuminated by Officer Bruckhart's testimony that criminal charges for drug delivery pending against Mr. Real in a separate and unrelated matter would be dismissed. *Id*. at 14-15.

Appellant also asserts no eyewitness evidence was presented at trial to establish he possessed cocaine or a firearm. In this regard, he states none of the officers testified they saw him with controlled substances or a weapon. *Id*. at 11-13. Appellant further stresses no marked funds were recovered from him and no forensic evidence, such as fingerprints, was obtained from the firearm to bolster Mr. Real's insufficient testimony that he possessed a firearm. *Id*. at 10, 16. Finally, he faults the officers for failing to search Mr. Real and his vehicle immediately following the transaction, for this left no way to ensure Mr. Real did not plant drugs and a firearm in his vehicle. *Id*. at 15.

We consider a challenge to the sufficiency of the evidence pursuant to the following standard:

> [O]ur standard of review of sufficiency claims requires that we evaluate the record "in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence." ***Commonwealth v. Widmer***, 560 Pa. 308, 744 A.2d 745, 751 (2000). "Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt."

*Commonwealth v. Brewer*, 876 A.2d 1029, 1032 (Pa.Super.2005). Nevertheless, "the Commonwealth need not establish guilt to a mathematical certainty." *Id.; see also Commonwealth v. Aguado*, 760 A.2d 1181, 1185 (Pa.Super. 2000) ("[T]he facts and circumstances established by the Commonwealth need not be absolutely incompatible with the defendant's innocence"). Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances. *See Commonwealth v. DiStefano*, 782 A.2d 574, 582 (Pa.Super. 2001). The Commonwealth may sustain its burden by means of wholly circumstantial evidence. *See Brewer*, 876 A.2d at 1032. Accordingly, "[t]he fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence." *Id.* (quoting *Commonwealth v. Murphy*, 795 A.2d 1025, 1038–39 (Pa.Super. 2002)). Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld. *See Brewer*, 876 A.2d at 1032.

*Commonwealth v. Pettyjohn*, 64 A.3d 1072, 1074-75 (Pa.Super. 2013).

In order to obtain a conviction under 35 P.S. § 780-113(a)(30), the Commonwealth must prove that a defendant both possessed a controlled substance and had an intent to deliver that substance. 35 P.S. § 780-113(a)(30); *See also Commonwealth v. Torres*, 617 A.2d 812 (Pa.Super. 1992). In addition, the offense of Persons not to possess firearms provides in relevant part that:

(1) [a] person who has been convicted of an offense enumerated in subsection (b) within or without this Commonwealth, regardless of the length of the sentence or whose conduct meets the criterial in subsection (c) shall not

- 7 -

possess, use, control, sell, transfer, or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth.

18 Pa.C.S.A. § 6105(a)(1).  As such, to sustain a conviction on this charge, the Commonwealth had to prove that Appellant had a prior conviction of a listed offense and possessed a firearm.  ***Commonwealth v. Williams***, 911 A.2d 548 (Pa.Super. 2006).  Also,

> "[i]n narcotics possession cases, the Commonwealth may meet its burden by showing actual, constructive, or joint constructive possession of the contraband." ***Commonwealth v. Thompson***, 286 Pa.Super. 31, 428 A.2d 223, 224 (1981). Actual possession is proven "by showing ... [that the] controlled substance [was] found on the [defendant's] person." ***Commonwealth v. Macolino***, 503 Pa. 201, 469 A.2d 132, 134 (1983). If the contraband is not discovered on the defendant's person, the Commonwealth may satisfy its evidentiary burden by proving that the defendant had constructive possession of the drug. ***Id.***
> Our Supreme Court has defined constructive possession as "the ability to exercise a conscious dominion over the illegal substance: the power to control the contraband and the intent to exercise that control." ***Macolino***, 469 A.2d at 134. In the words of our Supreme Court, "constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement." ***Commonwealth v. Johnson***, 611 Pa. 381, 26 A.3d 1078, 1093 (2011) (internal quotations, citations, and corrections omitted). It is a "judicially created doctrine ... [that] enables law enforcement officials to prosecute individuals in situations where the inference of possession is strong, yet actual possession at the time of arrest cannot be shown." Mark I. Rabinowitz, Note, *Criminal Law Constructive Possession: Must the Commonwealth Still Prove Intent?—**Commonwealth v. Mudrick***, 60 Temple L.Q. 445, 499–450 (1987).

***Commonwealth. v. Vargas***, 108 A.3d 858, 868 (Pa.Super. 2014) (*en banc*).

- 8 -

Our review of the testimony and evidence presented at trial viewed in a light most favorable to the Commonwealth as verdict winner reveals sufficient evidence from which a jury reasonably could have inferred that Appellant removed cocaine and a firearm from his SUV and placed those items in Mr. Real's vehicle. Mr. Real testified he had arranged to purchase cocaine and a firearm from Appellant at Pak's Grocery on March 10, 2014. Specifically, Mr. Real explained that during a telephone conversation made in the presence of Officer Bruckhart, he agreed to a purchase price of $650.00 for a half ounce of cocaine and of $500.00 for a handgun. N.T., 3/12-3/13/15, at 200-01. Officer Bruckhart provided Mr. Real with $1,150.00, thoroughly searched him before he proceeded to Pak's Grocery, followed him to the designated spot and watched him throughout the transaction. *Id*. at 201-02.

Mr. Real further testified that when Appellant initially entered his vehicle he handed Appellant the money which prompted Appellant to return to his SUV. When he returned to Mr. Real's car, Appellant placed a half ounce of cocaine in the center console. *Id*. at 203, 205. Appellant went to his car a second time, opened the back hatch of his SUV, and returned to Mr. Real who had remained seated alone in his vehicle. At that time, Appellant was holding a firearm which had been wrapped in a white bag or towel. Appellant removed the wrapping and placed the gun under the

passenger side seat of Mr. Real's vehicle. Appellant took the white cover with him to his SUV and left the scene. *Id*. at 203, 206.

On cross-examination, Mr. Real admitted that part of the reason he was willing to cooperate with Officer Bruckhart was the fact that he had felony charges pending against him and was told those charges may be reduced; they were in fact dismissed shortly thereafter. *Id*. at 208-09.

Regardless of Mr. Real's motives for acting as a CI, the testimony of three police officers present at the time of the transaction corroborated his account. Officer Bruckhart stated that he had been present when Mr. Real spoke to Appellant on the telephone. Prior to the meeting at Pak's Grocery, Officer Bruckhart searched Mr. Real's person, pockets, clothing and shoes as well as the passenger compartment, glove box and seats of his vehicle and discovered no contraband. *Id*. at 236-37. Officer Bruckhart followed Mr. Real to and from the designated meeting place where he and other officers observed Appellant, alone, meet with Mr. Real. *Id*. at 238. Upon receiving Mr. Real's call that the deal had been completed, Officer Bruckhart followed him to directly the Drug Task Force building where he searched Mr. Real and his vehicle a second time. This search uncovered cocaine wrapped in a paper towel in the center console, and a firearm along with a wad of paper towels containing rounds of ammunition underneath the front passenger seat. *Id*. at 239-41

In addition, Detective Schauer testified he watched Appellant exit his own vehicle, enter Mr. Real's, and walk back to his SUV. Appellant leaned into his SUV and returned to Mr. Real's only to again return to his own vehicle, open the trunk and return a second time to Mr. Real's vehicle. *Id*. at 116-19. Detective Schauer remarked that Mr. Real met with only Appellant, and he took photographs of the entire incident, which lasted three to five minutes. *Id*. at 119, 127. Finally, Trooper Dembowski testified that he, too, watched the entire exchange and saw Appellant remove a white object from his trunk and place it inside the passenger side of Mr. Real's vehicle. *Id*. at 161.

The parties stipulated the weapon Officer Bruckhart recovered from underneath the front passenger seat of Mr. Real's vehicle was a functional firearm and that Appellant fit the criteria of one who was not permitted possess firearms. The parties also stipulated that the substance later recovered from the center console of Mr. Real's vehicle was cocaine.

It is clear that the jury believed the testimony of Mr. Real and the police officers even after having been made aware that Mr. Real's motives for testifying may not have been purely due to his desire to amend his ways; it was within their province to do so. *See Pettyjohn*, *supra*. "As an appellate court, we defer to the credibility determinations of the fact-finder." *Commonwealth v. Heater*, 899 A.2d 1126, 1132 (Pa.Super. 2006).

Accordingly, we hold the evidence was sufficient to prove each element of PWID and persons to possess a firearm.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/17/2016