J-S44001-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :    IN THE SUPERIOR COURT OF
                             :              PENNSYLVANIA
                             :
            v.                     :
                             :
                             :
THOMAS DWYER                      :
                             :
             Appellant         :      No. 1058 EDA 2025

Appeal from the Judgment of Sentence Entered January 21, 2025
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0004800-2024

BEFORE: LAZARUS, P.J., DUBOW, J., and SULLIVAN, J.

MEMORANDUM BY LAZARUS, P.J.:          **FILED MARCH 12, 2026**

Thomas Dwyer appeals from the judgment of sentence, entered in the Court of Common Pleas of Philadelphia County, following his conviction of one count of indecent assault –without complainant's consent.[1] After review, we affirm.

The trial court set forth the facts of this case as follows:

On July 21, 2023, [Talia] Tacarotelli[, the complainant in this case,] and her friend[,] Brooke Robinson[,] went to a bar in the [C]ity and [C]ounty of Philadelphia[.] While at the bar[,] Robinson met [Dwyer] and began exchanging messages with him on Instagram. The two women left the bar sometime before 2:00 a.m. and took an Uber back to Robinson's house. Robinson invited [Dwyer] and he drove himself to her house. Tacarotelli, Robinson, and [Dwyer] were in the living room for a short amount of time, approximately fifteen to twenty minutes[,] before [Dwyer] and Robinson went upstairs to her bedroom. Tacarotelli fell asleep on a couch in the living room sometime after 4:30 a.m. Robinson's roommate of three years, Emily, was also home in her bedroom

---

[1] 18 Pa.C.S.A. § 3126(a)(1).

and typically left for work around 6:20 — 6:30 a.m. Robinson knew her roommate had work on July 22, 2023.

At some point in the morning of July 22, 2023, Tacarotelli woke up on the couch with [Dwyer] behind her. Tacarotelli was on her side facing the outside of the couch and [Dwyer] was between [her] and the backside of the couch. [Dwyer] was squeezing [her] shoulders and rubbing his [] penis[] against [her] butt. Tacarotelli kept her eyes closed and started to move so that he would know [she] was awake or waking up in hopes of him getting up and he did. [Dwyer] jumped off the couch and Tacarotelli opened her eyes at this time. Tacarotelli observed [Dwyer], in only his underwear, standing in front of her and then [Dwyer] proceeded to run upstairs. Once [Dwyer] ran upstairs[,] Tacarotelli ran upstairs and locked herself in Emily's room. While in the room[,] Tacarotelli called her ex-boyfriend and described the incident to him. The ex-boyfriend called the police to Robinson's house.

[] Robinson awoke to the noise of [Dwyer] moving around the room. She observed him rushing to collect his stuff and put his clothing on. Robinson offered to walk [Dwyer] out and proceeded to go downstairs before him. She noticed that Tacarotelli was not on the couch, where she had been when Robinson went to bed, and began to look for her. Robinson found Tacarotelli in Emily's room hysterically crying. Tacarotelli described the incident to Robinson. Robinson left the room and searched the entire downstairs, upstairs, and basement but [Dwyer] was no longer in the house. Robinson then went to message [Dwyer], to see where he was [] or what was going on. She could not find his Instagram account[,] meaning she was blocked or removed. Robinson also asked [Tacarotelli] to search, too, and no results were found. When the police arrived[,] both women made statements.

Trial Court Opinion, 4/29/25, at 1-2 (quotation marks removed).

On May 7, 2024, Dwyer was arrested for indecent assault—without complainant's consent, indecent assault—forcible compulsion, and simple assault. The municipal court held a nonjury trial on July 3, 2024, after which the municipal court found Dwyer guilty of indecent assault—without complainant's consent and not guilty of the remaining charges. Dwyer was

sentenced to twelve months of reporting probation followed by twelve months of non-reporting probation. On July 9, 2024, Dwyer filed an appeal to the Court of Common Pleas of Philadelphia County, Criminal Division, and the matter was re-tried in a nonjury trial on November 8, 2024. The trial court found Dwyer guilty of indecent assault—without complainant's consent. Sentencing was deferred and a pre-sentence investigation and mental health evaluation were ordered.

On January 21, 2025, the trial court sentenced Dwyer to two years of reporting probation and ordered him to register with the Pennsylvania State Police and comply with all Tier I requirements under 42 Pa.C.S.A. § 9799.55 of subchapter 1 of the Sex Offender Registration and Notification Act, 34 U.S.C. §§ 20901, et seq. The trial court also ordered Dwyer to be supervised by the Sexual Offender's Unit and to stay away from the complainant and allowed his supervision to be transferred to Burlington County in New Jersey. *See* Trial Court Opinion, 4/29/25, at 3.

Dwyer filed this timely appeal. Both Dwyer and the trial court complied with the requirements of Pa.R.A.P. 1925. Dwyer raises the following claims for our review:

> 1. Was the evidence insufficient to support finding [Dwyer] guilty beyond a reasonable doubt on the charge of indecent assault [without the complainant's consent?]
>
> 2. Did the trial court err and abuse its discretion by finding [Dwyer] guilty on the charge of indecent assault [without the complainant's consent] against the weight of the evidence, where Commonwealth witnesses, [] Tacarotelli and [] Robinson, provided inconsistent and vague testimony?

Appellant's Brief, at 5 (unpaginated; unnecessary capitalization omitted).

In his first issue on appeal, Dwyer challenges the sufficiency of the evidence. Specifically, he argues that the Commonwealth failed to present sufficient evidence to prove there were any signs or evidence of Dwyer's sexual arousal or gratification, noting there was no testimony of him having an "erection" or any arousal during the encounter. *See* Appellant's Brief, at 15 (unpaginated). Further, Dwyer argues that "the element of sexual arousal or gratification is even more doubtful, as it seems a willing partner [(Robinson)] awaited [Dwyer] just upstairs." *Id.* at 15-16 (unpaginated).

This Court reviews a challenge to the sufficiency of the evidence by determining:

> whether[,] viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that[,] as a matter of law[,] no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact, while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part[,] or none of the evidence.

*Commonwealth v. Smith*, 206 A.3d 551, 557 (Pa. Super. 2019) (citations and brackets omitted). However, if the evidence "is in contradiction to the

physical facts, [or] in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law." ***Commonwealth v. Heater***, 899 A.2d 1126, 1131 (Pa. Super. 2006), quoting ***Commonwealth v. Widmer***, 744 A.2d 745, 751 (Pa. 2000).

The Crimes Code defines indecent assault without consent as follows:

> A person is guilty of indecent assault if the person has indecent contact with the complainant, causes the complainant to have indecent contact with the person[,] or intentionally causes the complainant to come into contact with seminal fluid, urine[,] or feces **for the purpose of arousing sexual desire in the person or the complainant** and . . . the person does so without the complainant's consent[.]

18 Pa.C.S.A. § 3126(a)(1) (emphasis added). "Indecent contact" is defined as "[a]ny touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire, in any person." ***Id.*** at § 3103.

In determining whether contact was for the purpose of arousing or gratifying sexual desire, our Supreme Court has explained:

> [W]hether a part of the body was kissed, stroked, slapped, or poked does not inform whether the body part is intimate, but does speak to whether the touching was for sexual gratification. An example sharpens the point: if someone were to flick a bee off of a woman's breast, he would have touched what is reasonably considered to be an intimate part of her body, but the manner and purpose—a flicking done to prevent the person from being stung—goes to whether the touching was for sexual gratification.

***Commonwealth v. Gamby***, 283 A.3d 298, 315 (Pa. 2022). "Intent can be proven by direct or circumstantial evidence; it may be inferred from acts or conduct or from the attendant circumstances." ***Commonwealth v. Griffith***, 305 A.3d 573, 577 (Pa. Super. 2023). This Court has held that "an act [that]

does not occur outside of the context of a sexual or intimate situation" may support the determination that contact with an individual's sexual or intimate parts was for the purpose of sexual gratification or arousal. ***Commonwealth v. Evans***, 901 A.2d 528, 533 (Pa. Super. 2006).

The trial court found that Dwyer's actions were for the purpose of arousing sexual desire, as "the totality of the circumstances could only lead to the conclusion that Dwyer's actions had no legitimate purpose, such as for medical, hygienic, or law enforcement purposes."  Trial Court Opinion, 4/29/25, at 7.  We agree. ***See Evans***, ***supra***.

Viewed in the light most favorable to the Commonwealth as verdict winner, we find that the evidence was sufficient for the trial court to find that Dwyer, without Tacarotelli's consent, had "indecent contact with [her] . . . for the purpose of arousing sexual desire[.]"  18 Pa.C.S.A. § 3126(a)(1). Tacarotelli testified that she woke up to Dwyer rubbing the front of his body against her backside without her consent.  ***See*** N.T. Waiver Trial, 11/8/24, at 12, 15.  Tacarotelli specifically recalled that she felt "his penis rubbing against [her] backside" and that Dwyer was only wearing his underwear. ***Id.*** at 18-19.  While Dwyer points out that there is no testimony that he was "erect," Dwyer misapprehends the requisite proof of the element of "arousing or gratifying sexual desire"—such element does not require a finding that Dwyer *was* aroused, but that he acted with the purpose of arousing or gratifying sexual desire. ***See Commonwealth v. Artinian***, 723 EDA 2024, at *7 (Pa.

Super. filed Dec. 1, 2025) (Table)[2] (Court found meritless defendant's argument that absence of testimony that his penis was erect refutes indecent contact; such evidence not needed to prove indecent contact).  The trial court credited Tacarotelli's testimony, and it is well-settled that "the uncorroborated testimony of the complaining witness is sufficient to convict a defendant of sexual offenses." ***Commonwealth v. Castelhun***, 889 A.2d 1228, 1232 (Pa. Super. 2005) (citations and quotation marks omitted).  Thus, in viewing the totality of the circumstances, the evidence supports the trial court's reasonable inference that Dwyer acted with the purpose of arousing or gratifying sexual desire.  ***See, e.g.***, ***Commonwealth v. Wood***, 346 A.3d 344, at *11 (Pa. Super. 2025) (Table) (Court reasonably inferred defendant's action of rubbing victim's vagina through her clothes while she slept was for defendant's sexual gratification); ***Artinian***, ***supra*** at *7 (jury could reasonably infer defendant touched victim's buttocks and made her sit between his legs "in such a manner where she could feel his genitals" were actions for purpose of arousing or gratifying sexual desire).  Accordingly, the evidence was sufficient to support Dwyer's conviction of indecent assault, and his sufficiency claim fails.[3]

---

[2] ***See*** Pa.R.A.P. 126(a)-(b) (unpublished, non-precedential memorandum decisions of this Court, filed after May 1, 2019, may be cited for persuasive value).

[3] In the second half of his sufficiency argument, Dwyer contends that, because the record is unclear on the size of the couch, there is no way to know
*(Footnote Continued Next Page)*

Next, Dwyer contends the verdict was against the weight of the evidence. ***See*** Appellant's Brief, at 17-24 (unpaginated). Specifically, he argues that the trial court gave too much weight to the testimony of both Tacarotelli and Robinson and that a key witness, Emily, was absent from the trial. ***Id.***

Dwyer makes several arguments regarding the credibility and reliability of Tacarotelli's testimony. ***Id.*** at 17-21 (unpaginated). He contends the following facts resulted in "inconsistent and vague testimony": (1) Tacarotelli

_____

"whether the couch is even large enough for two [] people to lay side-by-side in the way described by [Tacarotelli]." Appellant's Brief, at 16 (unpaginated). Additionally, he argues that, because the complainant did not testify that she woke up when Dwyer "squeezed himself into the spot between [Tacarotelli] and the couch," her testimony is contrary to human nature. ***Id.*** While not quite clear, it appears that Dwyer is arguing that the evidence was insufficient to prove that there was any contact with Tacarotelli.

Both of these arguments are attempts to challenge the credibility of Tacarotelli and her testimony regarding the manner in which the incident occurred. As this Court has explained, "a sufficiency of the evidence review does not include an assessment of credibility of testimony offered by the Commonwealth." ***Commonwealth v. Juray***, 275 A.3d 1037, 1043 (Pa. Super. 2022) (citation omitted). Instead, such arguments are more properly characterized as challenges to the weight of the evidence. ***Id. See also Commonwealth v. W.H.M., Jr.***, 932 A.2d 155, 160 (Pa. Super. 2007) (explaining claim that jury erred in crediting victim's version of events over that of appellant goes to weight, not sufficiency, of evidence).

In addition, the Pennsylvania Supreme Court has held that an "appellant's challenge to the sufficiency of the evidence must fail" where an appellant phrases an issue as a challenge to the sufficiency of the evidence, but the argument that the appellant provides goes to the weight of the evidence. ***Commonwealth v. Small***, 741 A.2d 666, 672 (Pa. 1999). Therefore, to the extent that Dwyer attempts to argue that the evidence was insufficient to prove the element of "contact," his claim fails because it is more properly construed as a challenge to the weight of the evidence. ***See Small***, ***supra***.

was drinking on the night in question; (2) Tacarotelli's timeline of the night contradicts Robinson's timeline as well as testimony regarding Emily's location during the night; and (3) Tacarotelli's failure to call the police herself, as well as going upstairs where Dwyer had just fled, was questionable behavior for someone who claimed to be a victim of sexual assault. *Id.*

Next, Dwyer avers that Robinson's testimony "lack[s] a foundation in the laws of nature, calling [into] question the truthfulness and reliability of her testimony." *Id.* at 21. Specifically, Dwyer cites Robinson's testimony about Dwyer leaving the house without her noticing, which he claims would have been impossible. *Id.* at 21-23 (unpaginated). Further, while Robinson testified that Tacarotelli was "in hysterics" when Robinson reached Emily's room, there is no testimony that Robinson heard "any crying, whimpering, or yelling" as she passed Emily's door when she walked Dwyer out of the house. *Id.* at 22-23 (unpaginated).

Finally, Dwyer contends that, because the two witnesses are friends, there is a reasonable possibility that they provided biased testimony because there was "ample opportunity for Robinson and [Tacarotelli] to discuss their stories before law enforcement arrived." *Id.* at 23 (unpaginated).

When considering challenges to the weight of the evidence, we apply the following precepts:

> The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none[,] or some of the evidence and to determine the credibility of the witnesses. Resolving contradictory testimony and questions of credibility are matters for the finder of

fact. It is well-settled that we cannot substitute our judgment for that of the trier of fact.

Moreover, [a]ppellate review of a weight claim is a review of the [trial court's] exercise of discretion, not the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is [or is not] against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be [denied or] granted in the interest of justice.

Furthermore, in order for a defendant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague[,] and uncertain that the verdict shocks the conscience of the court.

***Commonwealth v. Miller***, 172 A.3d 632, 642-43 (Pa. Super. 2017) (citations and quotation marks omitted).

In the instant case, the trial court rejected Dwyer's weight of the evidence claim. It explained that

[t]he testimony of Robinson corroborated Tacarotelli's testimony of the incident and the sequence of events. Robinson testified that when she awoke[, Dwyer] was putting his clothes on and collecting his things. This corroborates Tacarotelli['s] statement that [Dwyer] was only in his underwear when the indecent contact occurred. Robinson stated that when she found Tacarotelli in Emily's room hysterically crying, Tacarotelli told her "that she was awoken to [Dwyer] behind her on the couch, rubbing himself up against her back. . . ." Robinson's testimony of the statement made by Tacarotelli to her was consistent with Tacarotell's testimony at trial.

This Court found both Tacarotelli's and Robinson's testimony credible. Thus, this [c]ourt's verdict is not shocking to one's sense of justice when looking at the totality of the evidence.

Trial Court Opinion, 4/29/25, at 4-5.

We discern no abuse of discretion by the trial court in reaching its determination that the verdict did not shock its conscience. Any inconsistencies in the evidence were for the trial court, as finder of fact, to resolve. The trial court was permitted to weigh the import of Tacarotelli's alleged intoxication or any discrepancies between the testimony of Tacarotelli and Robinson, including the timeline of events. *See Commonwealth v. Jacoby*, 170 A.3d 1065, 1081 (Pa. 2017) ("[I]nconsistencies in eyewitness testimony are not sufficient to warrant a new trial on grounds that the verdict was against the weight of the evidence."). In finding Robinson and Tacarotelli's version of events credible, the trial court found that Tacarotelli fled upstairs to Emily's room and locked herself inside the room immediately after the assault, which indicates that Emily was not present in the house at the time of the assault. *See* N.T. Waiver Trial, 11/8/24, at 24, 36-38. That the trial court, sitting as finder of fact, chose to believe the testimony of Tacarotelli and Robinson, was entirely within its province. *See Miller*, *supra* (finder of fact free to believe all, none, or some of evidence).

Dwyer essentially requests we re-weigh the evidence and reassess the credibility of the witnesses presented at trial. This we cannot do. The trial court, as finder of fact, had the duty to determine the credibility of the witnesses and evidence presented at trial. *See Commonwealth v. Collins*, 70 A.3d 1245, 1251 (Pa. Super. 2013) (stating "[a]n appellate court cannot substitute its judgment for that of the finder of fact" in assessing a weight

- 11 -

claim).  Therefore, we decline to disturb the trial court's rejection of Dwyer's challenge to the weight of the evidence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/12/2026